Simmons, Appellant, *v.* Simmons.

Argued November 14, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Joanne Ross Wilder*, for appellant.

No appearance entered nor brief submitted for appellee.

OPINION BY WATKINS, P.J., February 27, 1975:

This is an appeal from the order of the Court of Common Pleas of Allegheny County, Family Division, adjudicating the appellant in contempt of court and a sentence of four (4) days in the Allegheny County Jail.

The background of this case appears from the record to be as follows: The appellant, Romayne Simmons, and the appellee, Jimmie Simmons, were married in 1961. Two children were born to them as a result of this marriage, namely, Jimmie, Jr., and Gregory. In December, 1972, the appellee left the family home and established a separate residence from his wife and children.

On June 29, 1973, the appellant filed a complaint for support pursuant to The Pennsylvania Civil Procedural Support Law, 62 P.S. §2043-31, et seq., Act of July 13, 1953, P.L. 431, §1, and on August 1, 1973, an order was entered upon agreement of the parties directing the appellee to pay One Hundred Fifteen ($115.00) Dollars per month for the support of his two children and establishing visitation rights on Sundays between the hours

of 11:00 a.m. and 6:00 p.m. The parties were divorced on September 14, 1973.

On May 30, 1974, after hearing, a Modified Order of Court was entered providing for an increase in the support order and visitation to be reinstated in accordance with the prior order.

On August 28, 1974, the appellee filed a petition for a rule to show cause why visitation rights should not be complied with and should not be enlarged and a rule was granted upon the appellant to show cause why she should not comply with the May 30, 1974 order of court establishing reasonable visitation rights or why she should not be adjudged in contempt of court and why petitioner's visitation rights should not be enlarged to include partial overnight custody of the minor children for one weekend per month beginning on Saturday morning at 8 a.m. to Sunday at 6 p.m. The rule was made returnable on September 19, 1974, before Judge MCGREGOR, who had made the May 30, 1974, order.

On September 19, 1974, a hearing was held before Judge LARSEN, Judge MCGREGOR having been transferred from the Family Division of the Court of Common Pleas.

After hearing, the court stated that the matter of enlargement of the visitation would be referred to the Counselor who would speak with both parties and the two children, to "get a better view of what is going on." The Court then found the appellant guilty of contempt of court and sentenced her to four days in the Allegheny County Jail.

The appellant was immediately taken into custody and filed this appeal. Her petition for Supersedeas was granted by this Court and she was released from custody pending her appeal.

Subsequently, a conference in the Family Division Counselling Office was scheduled to determine future visitation. The appellant and her children appeared with her attorney. The appellee did not appear but was repre-

sented by counsel who stated that the appellee could not attend the conference because he had to work. The counselor spoke with the children alone, at some length, and subsequently with all parties present. The counselor stated that he would report the result of the conference to Judge LARSEN.

On October 9, 1974, the following order was entered on the docket: "By the Court and after Conference in 516 the parties agree that visitation to be arranged directly between the father and children. Visitation to be reviewed at later date. LARSEN, J."

We address our opinion to the question of the sentence of the court below as it determines the matter.

There can be no question that courts have the inherent power to enforce compliance with their lawful orders through civil contempt. *Riccobene Appeal,* 439 Pa. 404, 268 A. 2d 104 (1970). *Brocker v. Brocker,* 429 Pa. 513, 241 A. 2d 336 (1968). This power, however, is not without proscribed limitations.

There are two categories of contempt, civil and criminal. Criminal contempt is further divided into two types, direct and indirect, according to where the contemptuous conduct takes place. The distinction is significant because the type of contempt being punished will determine the manner in which the contempt is to be adjudicated as well as the punishment which may be imposed. *Philadelphia Marine Trade Ass'n. v. International Longshoremen's Ass'n., Local Union No. 1291,* 392 Pa. 500, 140 A. 2d 814 (1958) ; *Knaus v. Knaus,* 387 Pa. 370, 127 A. 2d 669 (1956) ; *Commonwealth ex rel. Beghian v. Beghian,* 408 Pa. 408, 184 A. 2d 270 (1962). Misconduct giving rise to civil contempt, like that giving rise to indirect criminal contempt, occurs elsewhere than in the presence (actual or constructive) of the court and consists of the violation of an order or decree of court. *Casco Products Corp. v. Hess Bros.,* 184 Pa. Superior Ct. 47, 132 A. 2d 922 (1957). Civil contempt proceedings are

those which are instituted to preserve and enforce the rights of private parties to suits and to compel obedience to court orders and decrees made for benefit of private parties.

In a civil contempt proceeding, the dominant purpose of the proceeding is coercive and remedial and to benefit those individuals for the enforcement of whose private rights and remedies the suits were instituted. An essential element of such proceedings is that some private interest appears.

"The punishment is to secure to the adverse party the right which the court has awarded to him." *Bessette v. W. B. Conkey Co.*, 194 U.S. 324, 329, 24 S. Ct. 665, 48 L. Ed. 997 (1904).

The contempt here is civil contempt. In *Knaus v. Knaus*, supra, the court pointed to various criteria, the presence of which indicate a proceeding in the nature of a civil contempt: (1) where the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original injunction action and filed as a continuation thereof; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant which is so contumelious that the court is impelled to act on its own motion.

Though this proceeding was instituted under The Pennsylvania Civil Procedural Support Law, Act of July 13, 1953, P.L. 431, §1, 62 P.S. §2043.31 et seq., which does not provide for determination of questions of child custody and visitation at the same proceedings, the parties entered into an agreement providing for support and visitation. The court formulated an order based upon this agreement. The court below has jurisdiction over

the subject matter and the person subject to the order and may enforce same.

The practice and procedure on attachment for civil contempt has been clearly defined by the Supreme Court of Pennsylvania. *Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 5-6, 253, A. 2d 263 (1969): "As far back as Commonwealth v. Snowden, 1 Brewster 218, 219 (1868), this Court set forth the practice on attachment for civil contempt: 'A rule is generally granted in the first instance on affidavits, upon the return of which the defendant answers on oath, the evidence is heard, and if the court should be of the opinion that the fact on which the rule was taken is not sufficiently answered or excused, and that in point of law a contempt has been incurred, an attachment is awarded when the defendant is brought in on this writ to answer interrogatories propounded to him on behalf of the Commonwealth, in whose name the writ always issues, and if he gives such answers as purge him from the criminality, he must be discharged.' In other words, it is a several step process that must take place to hold one in civil contempt—rule to show cause why an attachment should not issue, answer and hearing, rule absolute (arrest), hearing on the contempt citation, adjudication of contempt."

This procedure was not followed below. The rule issued without opportunity to answer—no hearing was held specifically directed to the contempt citation subsequent to the determination of the contempt by the court below.

Orders, decrees or sentences in civil contempt proceedings must state a condition which when complied with will purge the contemnor of his contempt. The prisoner carries the keys to his prison in his own pocket. *Riccobene Appeal,* supra.

Such was not the order of the court below.

The order of the court below is vacated and case remanded with a procedendo.

JACOBS and PRICE, JJ., concur in the result.