401 A.2d 799

**Raymond KRAMER, Appellant,**

v.

**Linda KELLY.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided April 12, 1979.

Cercone, President Judge, concurred in the result.

Paul Auerbach, Philadelphia, for appellant.

Steven M. Lipschutz, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This is an appeal from an order of the court below requiring appellant to make partial payment on arrears in child support or be found in contempt of court and incarcerated for thirty days. For the reasons stated herein, we affirm and modify that order.

The facts pertinent to our decision are as follows. On May 9, 1973, the court below entered an order of support pursuant to which appellant was to make payments of $40 per week; $15 being apportioned to appellee, and $25 to their four year old child (Kimberly). One year later, on May 23, 1974, the order was amended to vacate the support for

appellee while retaining the $25 per week payment for Kimberly. Due to the inability of the parents to establish a mutually agreeable visitation scheme, this later order also included formal visitation provisions. Although these orders failed to promote a felicitous relationship, the numerous allegations of both parties over the next year, averring non-payment of support and denial of visitation privileges, are not here relevant. It is sufficient to note that as of early July, 1975, appellant was essentially current with support payments.

On the 19th of that month, appellant arrived at appellee's home only to find it uninhabited and devoid of furniture. Appellee had, in fact, moved without informing either appellant or the court of her new address; a concealment precipitated by Kimberly's alleged refusal to see her father again. In an attempt to locate both his wife and child, appellant exhausted normal sources of information, such as the Post Office and court record office, before hiring a private detective who finally discovered appellee in December of 1975. Appellant immediately filed a petition for contempt on December 8, 1975.[1] In response, appellee filed on April 20, 1976, a petition to hold appellant in contempt for violation of the support order.[2] Two days later, appellee cross-petitioned to increase support.

On July 8, 1976, the court below found appellee in contempt of court and ordered her to pay a fine of $200 to the court within three months.[3] Weekly visitation rights were also granted to appellant, and hearings on the petitions for

1. Although the record does not so reflect, appellant contends in his brief that "both parties recognize" that the following petitions were also filed by appellant on that date, asking: (1) that arrears be struck during the period of concealment; (2) that his support obligations be reduced; and (3) that his visitation rights be enlarged.

2. It is unclear from the record whether appellant's final support payment was made on the 1st or 15th of July, 1975.

3. Although the propriety of this order is not here in question, appellant argues that the relative leniency of this sanction in comparison with the November 29th order directed against him clearly indicates a violation of his equal protection and due process rights. *See* U.S.Const. Amend. XIV. We find no merit in such an argument.

increase and decrease of support were postponed. On November 29, 1976, appellant's amended petition for reconsideration was dismissed by the court below and he was found not to be in contempt of court. Appellant was, however, ordered to pay $500 of the accumulated arrears within forty-five days or be automatically adjudged in contempt and confined for a thirty day period. Appellant was also required to make a weekly $10 payment so as to reduce any remaining arrears; this in addition to the still outstanding May 23, 1974 support order. A supersedeas was granted and appellant has taken the instant appeal.

Appellant first contends that the court below erred in sentencing him to an automatic term of confinement in the event that the $500 payment was not made within forty-five days. We agree.

The determination of whether a particular action constitutes civil or criminal contempt depends not on the intrinsic quality of the act, but on whether the dominant purpose of the court in imposing punishment is to coerce the contemnor into compliance with the order, or to vindicate the authority of the court. *Commonwealth v. Charlett,* 481 Pa. 22, 391 A.2d 1296 (1978); *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977); *Woods v. Dunlop,* 461 Pa. 35, 334 A.2d 619 (1975); *Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 (1968); *Simmons v. Simmons,* 232 Pa.Super. 365, 335 A.2d 764 (1975). The former indicates a proceeding in civil contempt, and the latter in criminal contempt.[4] *Commonwealth v. Charlett, supra; Barrett v. Barrett, supra.* The distinc-

---

4. In *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956), our supreme court enunciated several criteria which point to the existence of civil contempt: (1) when the complainant is a private person as opposed to the government or a governmental agency; (2) when the proceeding is entitled in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action; (3) when holding the defendant in contempt affords relief to a private party; (4) when the relief requested is primarily for the benefit of the complainant; and (5) when the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion. *Id.,* 387 Pa. at 378, 127 A.2d at 673.

tion is crucial, because while the same action might give rise to proceedings in both civil and criminal contempt, each confers distinct procedural rights; they may not be casually co-mingled. *Barrett v. Barrett, supra; Philadelphia Marine Trade Association v. International Longshoremen's Association,* 392 Pa. 500, 140 A.2d 814 (1958). A strictly penal sanction may only be imposed in a proceeding marked by the essential procedural safeguards of the criminal law and in accordance with statutory provisions. *Barrett v. Barrett, supra; In re Martorano,* 464 Pa. 66, 346 A.2d 22 (1975); *Commonwealth v. Abrams,* 461 Pa. 327, 336 A.2d 308 (1975); *Commonwealth v. Mayberry,* 459 Pa. 91, 327 A.2d 86 (1974).[5] In contrast, if the contempt is civil in nature, the court must impose conditions on the sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket. *Barrett v. Barrett, supra; In re Martorano, supra; Riccobene Appeal,* 439 Pa. 404, 268 A.2d 104 (1970); *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956).

Instantly, the court below reasoned that if appellant had not complied with its order within forty-five days, he would have been in open defiance of the court, and imprisonment would have been necessary to vindicate its authority. This is specious. Aside from the fact that proper criminal procedures would have been a pre-requisite to any such imprisonment, the court had the use of section 9 of the Civil Procedural Support Law, 62 P.S. § 2043.39, which provided a clear civil mechanism for effecting compliance with the duty of support.[6] In pertinent part, section (b) of the above stated that "any wilful failure to comply with any order of the court may be deemed a contempt of court and . . .

**5.** Indeed, in the absence of specific statutory authorization, a court may summarily order imprisonment as a penalty only for contempts committed in open court. 42 Pa.C.S. § 4132.

**6.** The Civil Procedural Support Law has since been repealed by the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, No. 53, § 1, 42 Pa.C.S. 20001. It has, however, been substantially reenacted by the Judicial Code. 42 Pa.C.S. §§ 6701–6713.

may be punishable by the court by commitment to the county jail or house of correction."[7]  In *Crislip v. Harshman,* 243 Pa.Super. 349, 365 A.2d 1260 (1976), we noted that five elements are essential to a civil contempt adjudication in a support context: (1) a rule to show cause why an attachment should not issue; (2) an answer and hearing; (3) a rule absolute (arrest); (4) a hearing on the contempt citation; and (5) an adjudication of contempt. *Id.,* 243 Pa.Super. at 352, 365 A.2d at 1261; *Simmons v. Simmons, supra,* 232 Pa.Super. at 370, 335 A.2d at 766.  Our supreme court has recently reviewed this procedure in *Barrett v. Barrett, supra,* and has added another requirement; when the court determines that there has been a willful noncompliance with its earlier support order constituting contempt, but the contemnor presents evidence of his *present* inability to comply and make up the arrears, the court in imposing coercive imprisonment should set conditions for purging the contempt and effecting release from imprisonment, which it believes beyond a reasonable doubt the contemnor has the *present* ability to meet.  *Barrett v. Barrett, supra* 232 Pa.Super. at 263–64, 368 A.2d 621.  The court found such caution necessary, for if the condition were beyond the capabilities of the contemnor, the imprisonment would be tantamount to one for criminal contempt without the benefits of criminal procedural safeguards.

It is clear that the court below failed to adhere to the principles and procedures of *Barrett.*  The type of prospective adjudication of contempt as was attempted here ignores any mandate requiring a hearing at the time contempt is adjudicated.  Nevertheless, this error does not necessitate a reversal, as we have the power to modify a lower court order.  Judicial Code, 42 Pa.C.S. § 706.  Accordingly, the order of the court below dated November 19, 1976, is modi-

7.  The applicable language in the Judicial Code is similar: "A defendant who willfully fails to comply with any order under this subchapter, . . . may, after hearing, be adjudged in contempt and committed to prison by the court."  42 Pa.C.S. § 6708(a).

fied to retain the requirement of a $500 payment within thirty days and a $10 weekly payment on account of arrears. If within thirty days of the remand of this record appellant has not complied, however, then the lower court may hold a hearing to determine if he is in contempt, and if so found, may impose conditional confinement only after adhering to the precepts of *Barrett.*

■ Appellant's remaining contentions are without merit. He first argues that appellee should not have been granted relief on her contempt petition while she herself was in violation of a court order. The basis for this claim is as follows. On July 8, 1976, the court below found appellee in contempt of court for her deliberate concealment of Kimberly and her failure to allow appellant to exercise his visitation rights. At that time, she was ordered to pay $200 prior to October 8, 1976. By that date, however, the contempt was not cured, and the money was not in fact paid until after the November 19, 1976 order against appellant.

In *Commonwealth ex rel. Goodwin v. Goodwin,* 413 Pa. 551, 198 A.2d 503 (1964), our supreme court stated: "[W]here a party is in flagrant contempt of a subsisting court order, he *may* properly be denied appellate relief until such time as the disobedience terminates." *Id.,* 413 Pa. at 555, 198 A.2d at 504–05 (emphasis added). *See also Commonwealth ex rel. Fusco v. Fusco,* 247 Pa.Super. 413, 372 A.2d 893 (1977); *Commonwealth ex rel. Rickert v. Rickert,* 223 Pa.Super. 1, 296 A.2d 841 (1972). Although appellant correctly cites this proposition, he misapplies it in the present context. In *Goodwin,* the lower court entered an order requiring support payments of $300 per week. The father paid only $150 per week for over one year, and then petitioned the court to reduce or vacate the order. Because appellant did not appear at the hearing, the lower court found him to be in contempt and issued a warrant for his arrest. Based upon the petitioner's "flagrant contempt," our supreme court affirmed the trial court's refusal to grant

a hearing on the petition. Instantly, while it cannot be gainsaid that appellee failed to comply in a timely fashion with the July 8th order, neither the trial court nor this court is under any obligation to dismiss a petition due solely to the disregard of a court order. Rather, it is merely given the option to do so upon a finding of "flagrant contempt." We see no reason to reverse the discretion of the lower court.

■ Also militating in favor of this conclusion is the fact that the support payments which appellee is attempting to procure are for the benefit of Kimberly. Although appellant argues that it would be naive not to view the payments as in fact accruing to the benefit of appellee, we think it hardly proper to assume that payments allocated for the child's support are being dissipated by the mother. It is an accepted principle that the misconduct of the mother does not affect a father's duty to support his child. Indeed, this duty is well nigh absolute, and a support order must ordinarily be complied with even if the actions of the wife place her in contempt of court. *Commonwealth ex rel. Mickey v. Mickey,* 220 Pa.Super. 39, 280 A.2d 417 (1971); *Commonwealth ex rel. McCartney v. McCartney,* 217 Pa.Super. 417, 274 A.2d 206 (1970); *Commonwealth ex rel. Firestone v. Firestone,* 158 Pa.Super. 579, 45 A.2d 923 (1946). We thus find no error in granting relief.

Appellant next argues, on the basis of *Commonwealth ex rel. Chila v. Chila,* 226 Pa.Super. 336, 313 A.2d 339 (1973), that arrears should have been stricken for the period of July—December 1975, during which appellee concealed her whereabouts and those of Kimberly. In *Chila,* the husband was under a support order requiring payment of $50 per month. For a period of over ten years, however, the wife concealed the location of both herself and their child. During this time, the county probation office clearly indicated to the husband that it did not expect continued payment as it could not forward the checks to the proper person. In these

circumstances, we held that the wife neither required nor expected support payments. The husband was therefore justified in his belief that he was not accumulating arrears during this period.

The instant situation is radically different. The period of concealment is far shorter (six months),[8] and there were no assurances from county officers that payment was not expected. As previously noted, matters of support are separate and independent from problems of visitation. *Commonwealth ex rel. Chila v. Chila, supra; Commonwealth ex rel. Mickey v. Mickey, supra; Commonwealth v. Mexal,* 201 Pa.Super. 457, 193 A.2d 680 (1963). Absent the extreme circumstances present in *Chila,* we are loath to deprive the child of support payments because of the improvident actions of the mother.

Appellant's next contention concerns his indemnification for the costs in locating and prosecuting appellee on the contempt charge. It is true that in a proceeding for civil contempt, the court may, in its discretion, impose the remedial punishment of a fine payable to the aggrieved litigant as compensation for the special damages—including attorney's fees—he may have sustained by reason of the offender's contumacious behavior. *Fleischman Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); *Bata v. Central-Penn National Bank of Philadelphia,* 448 Pa. 355, 293 A.2d 343 (1972); *Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 (1968). Our supreme court in *Bata* reasoned that an arbitrary limitation on recovery of such expenses would enable a litigant in contempt of a court order to coerce his opponent into unjustified monetary con-

---

**8.** The decision in *Chila* was not predicated solely on the length of the concealment. Nevertheless, we reiterated that "the passage of an *extended* period of time may require a re-analysis of the rights and obligations of the respective parties . . . ." *Commonwealth ex rel. Chila v. Chila, supra* 226 Pa.Super. at 340 n. 2, 313 A.2d at 341 n. 2, (emphasis added), *quoting Commonwealth ex rel. Crane v. Rosenberger,* 212 Pa.Super. 144, 148, 239 A.2d 810, 812 (1968).

cessions in order to avoid uncompensated damages and legal expenses. Nevertheless, the award of such damages was not made mandatory, being left instead to the discretion of the trial judge after a consideration of the actual expenses involved, the level of contumacious behavior, and all other relevant factors.

Instantly, appellant testified that he expended $80 in employing a detective to locate appellee, and a further $300 to employ an attorney to file the initial contempt proceeding.[9] The trial judge exercised his discretion by refusing to assign costs, noting only that he believed this to be the most efficacious manner in which to coerce compliance with the court's order. While we might hope for a more detailed exposition of the court's rationale, we can discover no manifest abuse of discretion which warrants a reversal on this point.[10]

Appellant's final contention is that the court below erred in failing to allow testimony on his petition to reduce support, and in refusing to hear additional testimony on his financial position. The first of these is belied by the record. It is true that the lower court heard testimony neither on appellant's petition to reduce support, nor on appellee's petition to increase support. Rather, because of the considerable time that had already been expended on the contempt and arrears issues, the court decided to continue both

9. In his brief to this court, appellant claimed fees, costs, and expenses in the matter amounting to $1,142.80.

10. Appellant also avers that he negotiated an agreement with appellee in January of 1976, whereby the latter would reimburse appellant the costs of prosecution by crediting them toward any support due between January, 1976, and June, 1976. Although the record reveals no signed stipulation to this effect, testimony was adduced which indicated that attorneys for both parties discussed the matter. Indeed, appellee testified that she dismissed her first attorney because he had suggested just such an agreement. Nevertheless, the court below found that no such accord had been consummated, and because this determination is based on competent evidence, we will not reverse it. *Auman v. Eash*, 228 Pa.Super. 242, 323 A.2d 94 (1974).

petitions for argument before another judge. It is axiomatic that the conduct of trial is the province of the trial judge, and his discretion will be controlling if exercised without abuse. *De Fulvio v. Holst,* 239 Pa.Super. 66, 362 A.2d 1098 (1976); *Wilt v. Beal,* 26 Pa.Cmwlth. 298, 363 A.2d 876 (1976). In view of the time already expended on the trial, such a continuance was reasonable and certainly not an abuse of discretion.

■ Second, because these hearings were not meant to decide the question of an increase or decrease in support, it was not necessary to examine in minute detail appellant's finances. The evidence that was adduced indicated that he was capable of paying the lump sum of $500 and the $10 weekly payment to be credited toward the arrears. Appellant had enjoyed steady employment as a supervisor at the Atlas Trading Company since July of 1967. His wage in January of 1976 was $275 per week with a net of $192.67. Appellant had further been spared the expense of support payments since July of 1975. Thus, a $500 lump sum payment was hardly an unreasonable figure. In any event, if appellant does not comply with the court order, the procedures mandated in *Barrett* would provide a hearing on his ability to pay prior to any incarceration.

The order of the court below is therefore modified as follows. Appellant is ordered to pay $500 within 30 days of the remand of the record, and $10 per week as credit on arrears; in the event appellant does not comply, the court below may hold a contempt proceeding and impose coercive incarceration in accordance with the mandates of *Barrett v. Barrett, supra.*

CERCONE, President Judge, concurs in the result.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.