416 A.2d 575

**Michael BIGGAN, Appellant,**

v.

**FOSTER TOWNSHIP ZONING HEARING BOARD, Appellee,**

v.

**Michael KASCHAK, Intervenor.**

Superior Court of Pennsylvania.

Argued March 22, 1979.

Filed Dec. 14, 1979.

Reargument Denied Feb. 15, 1980.

514

Michael T. Conahan, Hazelton for appellant.

Le Roy Lenhart, Freeland, did not file briefs for Foster Township Zoning Hearing Board, appellee.

Michael Kaschak, appellee, in pro. per.

Before CERCONE, President Judge, and HOFFMAN and WATKINS, JJ.

WATKINS, Judge:

This is an appeal from the order of the Court of Common Pleas of Luzerne County, by the appellant, Michael Biggan,

holding him in civil contempt for allegedly failing to follow the court's directives with regard to the operation of appellant's junkyard. Defendant was fined $1,000.00 and sentenced to ten (10) days in prison by the court below for failing to obey the order of the court below dated July 16, 1976.

Appellant and his son, Paul Biggan, are engaged in the junkyard business on .454 acres of land owned by Michael Biggan. The junkyard is located in a residential neighborhood in Foster Township, Luzerne County. On October 3, 1975, upon complaints of neighbors of the appellant, the Township Zoning Officer issued appellant a cease and desist order instructing him to cease all junkyard activities on the land. The neighbors had complained about the burning, storing and crushing of junk cars which appellant was allegedly performing on said .454 acres of land and on four acres of land located across the roadway from his tract. On January 16, 1976, the Township Zoning Hearing Board upheld the action of the Zoning Officer. Appellant then appealed the matter to the Court of Common Pleas of Luzerne County and on July 16, 1976 that court handed down an order which affirmed in part and reversed in part the order of the Zoning Board. The court found that the Biggans had been using his .454 acres as a junkyard since the late 1950's. This antedated the township zoning ordinance which was enacted in 1967. Therefore, Biggan's use of his land as a junkyard was a lawful non-conforming use. The court also found that in 1974 appellant began to use a four acre tract located across the road from his .454 acre tract in order to carry on the junkyard activities which included the burning, curring and crushing of the junked vehicles. After hearings on the matter, the court below ordered appellant to cease all junkyard activities on the four acres of land across the roadway from his tract. The court, however, reversed the zoning board's decision regarding appellant's .454 acre tract and held it to be a lawful, non-conforming use. The court then ordered appellant to fence or screen the .454 acre tract as required by the 1967 zoning

ordinance, to restrict the use of the .454 acre tract to the storage of not more than five vehicles at any one time and prohibited the burning and crushing of junked cars on the .454 acre tract. Appellant then appealed the part of the July 16, 1976 order restricting his use of the .454 acre tract to the Commonwealth Court. In *Biggan v. Foster Township Zoning Hearing Board et al.*, 32 Pa.Cmwlth. 426, 379 A.2d 657 (1977), the Commonwealth Court upheld the lower court's ruling regarding the use of the four acre tract, and recognized that appellant's use of the .454 acre tract was a lawful, non-conforming use. However, the court reversed the lower court's restrictions on the use of the .454 acre tract because the record was not clear with respect to appellant's use of that tract prior to October 16, 1967 (the date of the adoption of the zoning ordinance). Therefore, the Commonwealth Court ruled that appellant could store more than five cars on the .454 acre tract and ruled that the order to cease all crushing and burning of vehicles on that tract was unlawful as it exceeded the scope of the issues involved before the lower court.

On March 14, 1978, the court below entered another order giving appellant thirty (30) days to survey their property to establish the boundaries of their .454 acre tract, to erect a fence around their property and to confine their junkyard activities to that specific area. On June 2, 1978 a hearing was held before the lower court regarding appellant's alleged violations of the July 16, 1976 order as more specifically defined and modified by the Commonwealth Court decision and the March 14, 1978 order. After the June 2, 1978 hearing the court below found appellant in contempt of the July 16, 1976 order, as modified and fined appellant $1000.00 and sentenced him to ten (10) days in jail. This appeal followed in which appellant argues that he was not in contempt of court because he did not willfully disobey the court order and that the court below abused its discretion in converting a coercive sentence into a penal one without affording appellant the necessary procedural safeguards of the criminal justice system.

Appellant was found in contempt of court for failing to withdraw his junkyard activities within his .454 acre tract.

It is clear that appellant did erect a fence. However, there is a dispute regarding the erection of the fence as it was erected outside the boundaries of the .454 acre tract. The court below found that the erection of the fence was at least an attempt to obey the order. It is also clear that appellant made an attempt to have the tract surveyed. The fence was placed outside of the surveyed land because it was installed prior to the time of the survey. Appellant argues that strict compliance with the court's order regarding the placement of the fence would deny appellant ingress and egress to his home and that it is physically impossible to locate the fence on the boundaries of his land. Only when it appears that obedience of the court order is within the power of the party being coerced by said order may that party be held in civil contempt of the order. *Commonwealth of Pennsylvania Department of Environmental Resources v. Pennsylvania Power and Light Co.*, 461 Pa. 675, 337 A.2d 823 (1975). Appellant argues that it is impossible for him to comply with the order and that therefore he should not have been held in contempt for failure to do so.

Appellant was also found in contempt of court because he parked a van and his own automobile on the four acre lot from which he is barred from using as a junkyard. He denied parking the van on the said tract and claims that his own automobile had nothing to do with his junkyard business.

A review of the record shows that appellant's .454 acre tract had a frontage of 103 feet on the roadway in front of his home. He erected a redwood fence some thirty to thirty-six feet (30–36') beyond his property lines on each side of the house. The house itself occupied approximately forty feet (40') of the one hundred and three feet (103') frontage. Appellant's junkyard activities are conducted on the portion of his land behind his house. In order to transport vehicles to the area behind his house he uses a dirt access road which

runs alongside his house. It appears that appellant's property line ends somewhere on this dirt access road and that the area between his house and the access road is somewhat sloped. During the contempt hearing appellant testified that it was impossible for him to transport vehicles to the area behind his house without using the access road which is, at least partly, on property of Beltrami Enterprises, the adjoining property owner. However, the record is unclear as to just why this would be the case. Complicating the record is the fact that one Michael Kaschak, an intervenor in the case, handled the case on his own behalf (pro se) and never clearly established that appellant's contention that it was impossible for him to remain strictly within his own boundaries was incorrect. Therefore we have before us appellant's naked contention that he could not abide by the court order. We also have before us testimony of several relatives and neighbors of Kaschak to the effect that appellant continued to store vehicles and other material on the thirty to thirty-six feet (30–36′) area which lies between his boundary line and the fence. Appellant denied storing any junk in this area subsequent to the time of the survey. He claimed that any vehicles parked in that area were movable, licensed, registered vehicles which were used by him or members of his family for going to work and that they had nothing to do with the junkyard business. We agree with appellant that the parking of any vehicles which are movable under their own power, licensed, inspected and the use of which is restricted to personal use by him or members of his family for purposes not related to the junkyard business in the thirty-thirty-six (30–36′) area does not constitute a violation of the July 16, 1976 order as modified. The parking of such vehicles has nothing to do with the operation of the junkyard and it is the duty of the adjoining property owner to object to the use of his land for such purposes. It is also clear that the operation of the junkyard business is lawful only if it is confined to the .454 acre tract and the use of the thirty-thirty-six feet (30–36′) tract of Beltrami's land for the storage of junked vehicles, parts, tires, tools or machinery which are related to the junkyard business would be a

violation of the July 16, 1976 order, as modified. Although appellant denied it, certain of the intervenor's witnesses did testify that tires and other items related to the junkyard business were kept in the proscribed area between the property line and the fence. Susan Kaschak testified that she had seen "cars, trucks, metal, tires, all kinds of—even little shanties" in the proscribed area. She then went on to describe seeing a white van in the area on May 21, 1978 but couldn't remember how long it was there. The problem with this testimony is that it does not pinpoint when the metal and tires or other items of the junkyard business were seen in the area. This is important because appellant could be held accountable for willfully violating the order only after the survey was performed because before that time he reasonably believed the thirty-thirty-six (30–36') feet strip to be his as he had used it for 28 years and was unsure of his boundary lines. The basic problem, however, is that we do not find sufficient facts on the record to determine whether it was indeed impossible for appellant to comply with the court order as he alleges it was. We do note that appellant's lot was one hundred and three feet (103') in width and that if his house was forty feet (40') in width there would still be sixty-three feet (63') remaining which fronted on the road-way and which appellant might use to construct a new access road, thereby removing the necessity of his using the Beltrami access road and therefore allowing him to move his fence back to his own boundary lines pursuant to the survey. In the event that it is determined that appellant could do this we believe that his disobedience of the court order was willful and that he was validly held in contempt of court. Until we have more information regarding whether compliance with the order was an impossibility or not we cannot rule on whether the disobedience was willful or not.

Order of June 2, 1978 holding appellant in contempt is reversed and the record is remanded to the court below for hearing to take evidence on whether compliance with order of June 2, 1978 was possible or not.

HOFFMAN, J., files a dissenting statement.

520

HOFFMAN, Judge, dissenting:

I dissent from the opinion of the majority because I do not believe that this Court has jurisdiction to decide this appeal. I would transfer the case to the Commonwealth Court. *See* 42 Pa.C.S.A. § 762(a)(4)(i).