473 A.2d 1060

**Louise E. GRUBB**

v.

**Gordon GRUBB.**

**Appeal of BREWERY AND BEER DISTRIBUTORS, DRIVERS, HELPERS AND PLATFORM MEN LOCAL UNION NO. 830 AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS A/K/A LOCAL UNION 830.**

Superior Court of Pennsylvania.

Argued May 31, 1983.

Filed March 16, 1984.

220

Stephen F. Ritner, Philadelphia, for appellants.

Ann Miller and Paul R. Rosen, Philadelphia, for Louise Grubb, appellee.

Charles C. Shainberg, Philadelphia, for Gordon Grubb, appellee.

Before ROWLEY, WIEAND and CIRILLO, JJ.

WIEAND, Judge:

This is an appeal from an order holding a labor union in contempt of court because its custodian of records failed to produce all records requested by a subpoena duces tecum issued in a divorce action commenced against the union's managing officer, Gordon Grubb. For the reasons hereinafter set forth, we reverse.

During the pendency of a divorce action against Gordon Grubb, Mrs. Grubb filed a petition under Pa.R.C.P. 1920.13 for alimony pendente lite and counsel fees. Grubb was an active member and managing officer of Brewery and Beer Distributors, Drivers, Helpers and Platform Men, Local Union 830 (the Union). Mrs. Grubb's attorney caused a subpoena duces tecum to be issued to the Union's "custodian of records" directing him to appear for hearing and to bring with him records showing Gordon Grubb's wage and salary history, the fringe benefits to which he was entitled, and information regarding the value of his interest in a job-related pension plan. A motion for protective order was filed and denied, and the Union was ordered to deliver the requested records to Mrs. Grubb's attorney. Salary records

were thereafter obtained and furnished to plaintiff's counsel. However, counsel for the Union failed to obtain the information regarding Grubb's interest in the pension plan. Instead, he reported that the pension fund was a separate entity, housed in a different building, and managed and controlled by trustees appointed by the Union and the employers of union members. The pension information requested and the pension records, counsel stated, were not available to the Union's custodian of the records. He suggested that these items could be obtained from the administrator of the pension fund. Counsel for Mrs. Grubb thereupon cited the Union for contempt, and a hearing on the citation was set. Prior to this hearing, Mrs. Grubb also caused a subpoena to be served upon Morris Goldman, a Union affiliated trustee of the pension fund. He provided most of the requested pension information to Mrs. Grubb's counsel. However, at the time of the hearing, certain actuarial data remained unsupplied.[1] This information required computations by the pension fund's privately retained actuary, and these calculations had not been completed prior to the hearing.

At the hearing, no testimony was taken. After listening to arguments of counsel in chambers, the court entered an order holding the Union in contempt. The order imposed an unconditional fine of $2,000.00, awarded counsel fees to Mrs. Grubb's attorney of $1,500.00, and directed that a fine of $200.00 per day be paid by the Union if the remaining pension information were not furnished within a week of the court's order. The daily fine of $200.00 was never assessed, for the desired information was furnished by the actuary for the pension fund. The Union appealed the order holding it in contempt. Thereafter, the marital action between Louise and Gordon Grubb was settled amicably; and the counsel fees awarded by the court against the Union were waived. The only portion of the court's order

1. Goldman failed to appear at the hearing, allegedly because of inadequate notice. His failure to appear, in any event, was irrelevant on the issue of whether the Union had been contemptuous of the court's prior order or the subpoena issued to the custodian of its records.

not moot, therefore, is the unconditional fine of $2,000.00 which the court assessed against the Union.

■ Contempt may be civil or criminal; criminal contempts are further divided into direct and indirect classifications. *Commonwealth v. Marcone*, 487 Pa. 572, 577, 410 A.2d 759, 762 (1980); *Brocker v. Brocker*, 429 Pa. 513, 519, 241 A.2d 336, 338 (1968), *cert. denied*, 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969); *Commonwealth v. Harris*, 409 Pa. 163, 173, 185 A.2d 586, 591 (1962); *Simmons v. Simmons*, 232 Pa.Super. 365, 369, 335 A.2d 764, 766 (1975). "The distinguishing characteristic between contempts which are classified as criminal and those labeled civil is that the latter has as its dominant purpose to enforce compliance with an order of court for the benefit of the party in whose favor the order runs. Criminal contempts, on the other hand, have as a dominant purpose the vindication of the dignity and authority of the court and to protect the interests of the general public." *Commonwealth v. Marcone, supra* 487 Pa. at 577, 410 A.2d at 762 (citations omitted). The "[d]ominant purpose of coercion or punishment is expressed in the sanction imposed. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance." *In re Martorano*, 464 Pa. 66, 78–79, 346 A.2d 22, 28 (1975) (citations and footnote omitted). See also: *Commonwealth v. Charlett*, 481 Pa. 22, 27–28, 391 A.2d 1296, 1298 (1978); *Barrett v. Barrett*, 470 Pa. 253, 260, 368 A.2d 616, 619 (1977); *Woods v. Dunlop*, 461 Pa. 35, 39–40 & n. 2, 334 A.2d 619, 621–622 & n. 2 (1975); *Brocker v. Brocker, supra* 429 Pa. at 519–521, 241 A.2d at 338–339; *Rouse Philadelphia Inc. v. Ad Hoc '78*, 274 Pa.Super. 54, 71–72, 417 A.2d 1248, 1258 (1979), *cert. denied*, 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980); *Kramer v. Kelly*, 265 Pa.Super. 58, 63–64, 401 A.2d 799, 801–802 (1979). Where the contempt is civil in nature, "the court must impose conditions on the

sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket." *Id.*, 265 Pa.Superior Ct. at 64, 401 A.2d at 802, citing *Barrett v. Barrett, supra; Riccobene Appeal,* 439 Pa. 404, 268 A.2d 104 (1970). In such cases, the "court is not permitted to impose a coercive sentence conditioned on the contemnor's performance of some act that is incapable of performance." *In re Martorano, supra* 464 Pa. at 80, 346 A.2d at 29 (footnote omitted). "[A] contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally." *Id.* (footnote omitted). See: *Barrett v. Barrett, supra* 470 Pa. at 261, 368 A.2d at 619; *Kramer v. Kelly, supra* 268 Pa.Super. at 64, 401 A.2d at 801–802. See generally: *Commonwealth v. Abrams,* 461 Pa. 327, 336 A.2d 308 (1975); *Commonwealth v. Mayberry,* 459 Pa. 91, 327 A.2d 86 (1974). "A direct criminal contempt consists of misconduct of a person in the presence of the court, or disobedience to or neglect of the lawful process of the court, or to misbehavior so near thereto as to interfere with the immediate business of the court.... All other behavior which may have a more remote impact upon the dignity of the court and its ability to fulfill its responsibilities are classified as indirect contempts." *Commonwealth v. Marcone, supra* 487 Pa. at 578–579, 410 A.2d at 762–763 (citations omitted). See also: *Commonwealth v. Garrison,* 478 Pa. 356, 386 A.2d 971 (1978) (Opinion announcing the decision of the Court by Roberts, J.); *Philadelphia Marine Trade Association v. International Longshoreman's Association,* 392 Pa. 500, 140 A.2d 814 (1958). Certain direct criminal contempts may be punished summarily. These contempts are listed at 42 Pa.C.S. § 4132 as follows:

"(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors, or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court thereby obstructing the administration of justice."

Only contempts committed in open court may be punished by imprisonment; other contempts are punishable by fine only. 42 Pa.C.S. § 4133.

A subpoenaed witness who refuses to testify when ordered to do so may be dealt with either by criminal contempt, civil contempt or both. *In re Martorano, supra* 464 Pa. at 76–77, 346 A.2d at 27–28. See also: *Commonwealth v. Hawkins*, 322 Pa.Super. 199, 469 A.2d 252 (1983). A witness who refuses to comply with a subpoena duces tecum may be dealt with in similar fashion. See generally: *Federal Trade Commission v. Scientific Living, Inc.*, 150 F.Supp. 495, 500 (M.D.Pa.1957), *aff'd mem.*, 254 F.2d 598 (3rd Cir.), *cert. denied*, 355 U.S. 940, 78 S.Ct. 429, 2 L.Ed.2d 421 (1958). A willful refusal to comply with a subpoena duces tecum is a direct affront to the dignity and authority of the court, which may be vindicated by imposition of an unconditional fine. However, a court may also proceed civilly to coerce compliance for the benefit of the party who has caused the subpoena to issue. If a court proceeds criminally and civilly in the manner prescribed by law, it may impose both an unconditional fine and a fine which is conditional upon noncompliance. Contrary to the Union's argument, therefore, we find no impropriety inherent in a contempt order which imposes both an unconditional fine and an additional fine of $200.00 per day for each day that non-compliance continues.

We are persuaded, however, that finding the Union in contempt of court was erroneous. In *Commonwealth v. Garrison, supra,* Justice Roberts said, in announcing the decision of the Court, "No satisfactory definition of contemptuous misconduct has been developed. Perhaps the best definition is that misconduct is behavior that is inappropriate to the role of the actor." *Id.* 478 Pa. at 372, 386 A.2d at 979. "[T]he mere showing of noncompliance with a court order ... is never sufficient, alone, to prove con-

tempt." *Commonwealth v. Haefner,* 470 Pa. 392, 396, 368 A.2d 686, 688 (1977). To be contemptuous, conduct "must be such that some degree of delinquency or misbehavior can be predicated of it." *In re Contempt of Myers & Brei,* 83 Pa.Super. 383, 387 (1924) (citation omitted).

■ As a general rule, there is no contempt in refusing to obey an order when the alleged contemnor, without fault on his part, is unable to comply with it. 7A P.L.E., Contempt § 12. See also: *Biggan v. Foster Township Zoning Hearing Board,* 272 Pa.Super. 513, 517, 416 A.2d 575, 577 (1979); *Liberal Credit Clothing Co. v. Tropp,* 135 Pa.Super. 53, 60, 4 A.2d 565, 568 (1939). "If it is demonstrated that an alleged contemnor is unable to perform (in contrast to willfully disobeying) and has in good faith attempted to comply with a court order (in contrast to having shown disrespect), the purposes for punishing noncompliance are eliminated." *Commonwealth, Department of Environmental Resources v. Pennsylvania Power Co.,* 461 Pa. 675, 687, 337 A.2d 823, 829 (1975) (plurality opinion) (citations omitted). See also: *Commonwealth v. Kreplick,* 379 Mass. 494, 399 N.E.2d 9 (1980) (subpoena duces tecum issued by special grand jury and served upon defendant as "keeper of the [corporate] records" is not enforceable by contempt proceedings against defendant in the absence of evidence that the requested documents were in the defendant's possession or under defendant's control).

■ In the instant case, after its request for a protective order had been denied, the Union furnished to counsel for Mrs. Grubb, as the court had directed, the records pertaining to Mr. Grubb's salary, including fringe benefits. With respect to the requested pension information, the Union responded that it did not have those records and recited the manner in which such information could be obtained. Parenthetically, it may be observed that it was by means

similar to that suggested by the Union's attorney that Mrs. Grubb subsequently obtained the desired information.[2]

This conduct by the Union was not contemptuous of the court's order. Its response to the subpoena and also to the court's order denying a protective order was not inappropriate. Contrary to the trial court's observations, there was no evidence whatsoever that the Union had placed "road blocks" in the way of Mrs. Grubb's efforts to obtain information regarding her husband's pension rights. It was not contemptuous, as the court seemed to think, that the Union failed to obtain for Mrs. Grubb those pension records which it did not have in its possession. The issue was not whether the Union and the pension plan were related, as opposed to being entirely separate entities, but whether the Union's response to the subpoena duces tecum was inappropriate and contemptuous. We conclude that the Union response was appropriate and not contemptuous, and that it was error to hold otherwise.

Reversed.

---

2. The Union also directed its own request to the administrator of the pension fund for the information which Mrs. Grubb wished to obtain.