J-A20023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN A. PEZZUTI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LINDA S. PEZZUTI | |
| Appellant | No. 2772 EDA 2013 |

Appeal from the Order Entered August 27, 2013
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 399-2003 Civil

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                **FILED AUGUST 22, 2014**

Appellant, Linda S. Pezzuti, appeals from the August 27, 2013 order finding her in direct criminal contempt and sentencing her to pay a fine of $500.00.  After careful review, we reverse the August 27, 2013 contempt order and discharge Appellant.

The factual and procedural history of this case can be summarized as follows.  Appellant and Appellee, John A. Pezzuti (Father), have been involved in contentious custody litigation concerning their daughter, A.P., now age 15, since their first separation in October, 2000.  The original custody action was filed in Monroe County.  Appellant moved to Wayne County shortly after the commencement of the custody action.  At times, Appellant has unsuccessfully sought to have venue of the custody case established in Wayne County.

Relative to matters proceeding in Wayne County, the certified record reveals Appellant, on September 8, 2003, initially filed a *pro se* Preacipe for writ of summons, including a request for admissions and a motion for transfer of venue of the Monroe County custody action.[1]  On October 10, 2003, Appellant filed a counseled petition for modification of the Monroe County custody order of July 17, 2003 as amended by order dated August 12, 2003.  By this time, Father resided in Pike County, but asserted his intention of moving back to Monroe County.  On October 14, 2003, the trial court entered an order, *sua sponte*, transferring the matter to Monroe County.  On October 31, 2003, Appellant filed a motion to reconsider.  After submissions presented by the parties, the trial court denied Appellant's motion for reconsideration.  In its accompanying opinion the trial court noted it entered the order "to put an end to the obfuscation engaged in by [Appellant]," and further noting Mother had already unsuccessfully litigated in Monroe County requests for change of venue to Wayne County including appeals to this Court.

On February 27, 2004, Appellant filed another motion in Wayne County to modify the August 12, 2011 Monroe County custody order.  The trial court, apparently treating the motion as a petition for reconsideration,

_____

[1] These were filed under the instant civil docket number notwithstanding they sought to raise a custody matter.  As a writ of summons is ineffective to commence a custody complaint or petition for modification, this filing triggered no trial court action.

ordered the case transferred to Monroe County on March 3, 2004. On March 11, 2004, Appellant filed a notice of appeal from the March 3, 2004 order. This Court affirmed the trial court in a memorandum opinion filed on December 14, 2004. *Pezzuti v. Pezzuti*, 869 A.2d 23 (Pa. Super. 2004) (unpublished memorandum).

On February 17, 2012, Appellant filed a copy of a custody order from Monroe County dated December of 2011. On August 16, 2013, Appellant filed a *pro se* "Emergency Petition and Relief for Modification of Custody Due to Relocation of School," and a *pro se* "Emergency Motion for Modification of Custody due to Change in School and Relief." Both filings requested the same relief, to wit that the current custody order be amended to allow A.P. to attend a new high school with revised custody and partial custody schedules. In both petitions, Appellant referred to the order to be amended as follows. "On or about December 13, 2011, the current court [sic] was entered with both parents sharing both physical and legal custody. Entered in Wayne County court Docket on or about February 12, 2013." Emergency Petition, 8/16/13, at 2, ¶ 6; Emergency Motion, 8/16/13, at 1, ¶ 6.[2]

Although there is no entry in the trial court docket indicating the scheduling of a hearing on these motions, the trial court entered an order on August 20, 2013, indicating a hearing had been held "based on

_____

[2] As noted the actual date of the filing of the foreign order from Monroe County was February 17, 2012. A copy of the Monroe County order was attached to the Emergency Petition.

representations of [Appellant] that there was an existing Wayne County custody action in this case." Trial Court Order, 8/20/13, at 1. However, having realized subsequent to the hearing that the active custody case and order was in Monroe County, the trial court denied Appellant's emergency petition and directed that all future pleadings related to custody of A.P. be filed in Monroe County unless leave to file elsewhere is first granted by Monroe County. *Id.*, ¶¶ 1, 2. The trial court also directed Appellant to appear "to show cause why [Appellant] should not be held in Criminal Contempt of Court." *Id.* at 2, ¶ 3.

On August 27, 2013, following a brief hearing, the trial court entered an order finding Appellant in direct criminal contempt of court, and imposing a fine of $500.00. Trial Court Order, 8/27/13, at 1. On September 26, 2013, Appellant filed a timely *pro se* notice of appeal.[3]

On appeal, Appellant raises the following issue for our consideration.

> Was the evidence insufficient to sustain [Appellant's] conviction of direct criminal contempt when no evidence was presented to indicate that [Appellant] is a member of court personnel or that the trial court had previously entered an order or decree that [Appellant] disobeyed, and when [Appellant's] conduct was based upon her attorney's advice and was appropriate under the particular circumstances?

Appellant's Brief at 4.

_____

[3] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. Father, nominally an appellee, has not participated in this appeal.

- 4 -

It is axiomatic that "[i]n Pennsylvania, trial courts have an inherent power to impose summary punishment for contempt of court." ***Williams v. Williams***, 681 A.2d 181, 182 (Pa. Super. 1996), *affirmed*, 721 A.2d 1072 (Pa. 1998).  That power, however, is circumscribed by statute, providing in relevant part as follows.

> **§ 4132. Attachment and summary punishment for contempts**
>
> The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:
>
> …
>
> (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132.[4]  "[T]o sustain a conviction for direct criminal contempt under this provision there must be proof beyond a reasonable

_____

[4]  Appellant devotes a portion of her argument demonstrating the inapplicability of Subsections (1) and (2) of Section 4132, which permit an adjudication for contempt in the following circumstances.

> (1) The official misconduct of the officers of such courts respectively.
>
> (2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

42 Pa.C.S.A. 4132 (1), (2).  **See** Appellant's Brief at 19-21.  Although the trial court does not reference Section 4132 in its order or Rule 1925 opinion, its reference to Appellants' conduct "in open court" makes it clear it relied on
*(Footnote Continued Next Page)*

doubt: (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice." ***Commonwealth v. Williams***, 753 A.2d 856, 861 (Pa. Super. 2000), *appeal denied*, 75 A.2d 89 (Pa. 2000).

> Use of the court's summary contempt power is reviewed under an abuse of discretion standard. ***Commonwealth v. Stevenson***, 482 Pa. 76, 393 A.2d 386, 393 (1978) (plurality opinion).

> We have held that in considering an appeal from a contempt order, we place great reliance on the discretion of the trial judge. Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs. In cases of direct criminal contempt, that is, where the contumacious act is committed in the presence of the court and disrupts the administration of justice, an appellate court is confined to an examination of the record to determine if the facts support the trial court's decision.

> ***Commonwealth v. Jackson***, 367 Pa.Super. 6, 532 A.2d 28, 31–32 (1987) (quotations and citations omitted).

***Commonwealth v. Moody***, 46 A.3d 765, 771 (Pa. Super. 2012), *appeal granted in part*, 79 A.3d 1093 (Pa. 2013).[5] "All facts in a conviction of

---

*(Footnote Continued)*

Subsection (3). Trial Court Opinion, 11/22/13, at 4; ***see also*** N.T., 8/27/13, at 10-11. We agree that subsections (1) and (2) do not apply to the circumstances of this case, which do not implicate official misconduct or lawful process.

[5] Our Supreme Court has granted the Commonwealth's petition for allowance of appeal in ***Moody*** on the following questions.
*(Footnote Continued Next Page)*

- 6 -

criminal contempt of court must be proven beyond a reasonable doubt."

***Behr v. Behr***, 695 A.2d 776, 779 (Pa. 1997).

> When acting to uphold its authority, [] a court must use the least possible power and should first consider less severe remedies such as civil contempt before imposing summary criminal contempt. The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate….

***Moody***, ***supra*** at 773, n.7, *quoting* ***Commonwealth v. Garrison***, 386 A.2d 971, 976 (Pa. 1978). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." ***Commonwealth v. Walsh***, 36 A.3d 613, 620 (Pa. Super. 2012) (citation omitted).

With these principles in mind, we proceed to Appellant's challenge to the sufficiency of the evidence to sustain the trial court's finding of direct

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

> (1) Did the Superior Court err in ruling that Respondent's violent in-court conduct was not summary direct criminal contempt because the trial court supposedly did not observe the conduct?
>
> (2) In cases of summary direct criminal contempt, is a defendant entitled to counsel and to call witnesses?

***Commonwealth v. Moody***, 79 A.3d 1093, 1093-1094 (Pa. 2013) (*per curiam* order)

criminal contempt.[6]   First, we note that the basis for the trial court finding Appellant in direct criminal contempt in this case was its determination that, at the August 20, 2013 hearing, Appellant made misrepresentations and omissions, leading the trial court to believe Wayne County was the proper venue for Appellant's emergency motion to modify.   Trial Court Opinion, 11/22/13, at 3.   The trial court concluded that Appellant thereby attempted to "commit a fraud upon the [c]ourt."  *Id.* at 4.

Appellant argues that the trial court's findings relative to her alleged contemptuous conduct is unsupported by the record or the trial court's findings of fact.  Appellant's Brief at 23.   Alternatively, Appellant argues the "conduct in the present case falls short of the definition of 'misconduct' required to sustain a conviction under 42 Pa.C.S.A. § 4132(3)," and does not constitute an obstruction of the trial court's proceedings.  *Id.* at 22.  Upon a close review of the record, we agree with both of Appellant's arguments.

_____

[6] The trial court clearly distinguished its determination from a proceeding for civil contempt, which has as its aim to compel compliance with a court's directive and must contain "conditions on the sentence so as to permit the contemnor to purge himself" of the contempt. *Grubb v. Grubb*, 473 A.2d 1060, 1062 (Pa. Super. 1984); *see* N.T., 8/27/13, at 10-11.  Criminal Contempt involves the imposition of a fixed fine or term of incarceration intended to punish. *Id.*  Such is the instant case.  There is a further distinction between direct and indirect criminal contempt. *Moody*, *supra* at 772 (citation omitted).  "A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court." *Id.*, quoting *Commonwealth v. Brumbaugh*, 932 A.2d 108, 109 (Pa. Super. 2007).  Again, such is not the instant case.

The trial court references the following as constituting Appellant's misrepresentations and omissions.

> While presenting the Petition for Modification on August 20, 2013, [Appellant] was questioned about the current custody order under which the parties were operating, [Appellant] failed to inform the Court that the custody Order was issued in Monroe County. [Appellant] was questioned regarding whether the docket number was a civil or domestic relations docket. The Court asked [Appellant] if the case was a divorce and custody action. Plaintiff Mother replied that the case was in fact a divorce and custody matter.

Trial Court Opinion, 11/22/13, at 3. The trial court continued that it only determined that the foregoing statements were "misrepresentations and/or misrepresentations by omission" at the August 27, 2013 hearing. *Id.* However, a review of the transcript from the August 27, 2013 hearing reveals that the trial court did not consult the record to confirm or discount Appellant's assertion that she indeed attached the Monroe County order to her emergency motions, which she contends belies any claim of misrepresentation.

> [Appellant:] In my petition, if you look at it, I attached the court order and I used Exhibit A, B and C and it all referred to the court order of Monroe County.
>
> [The Trial Court:] Not in the copy I have. I don't see a court order from Monroe County.

N.T., 11/27/13, at 10. The record, however, reflects Appellant did attach the Monroe County order she sought to have modified as an exhibit to her

petition for emergency modification, albeit not her contemporaneous emergency motion for modification, which contained additional exhibits. Accordingly, the record does not support the trial court's finding that Appellant intentionally misled the trial court about the county of origin of the order sought to be modified.

Even assuming the trial court remained unaware of the procedural stance of the case through Appellant's omissions at the August 20, 2013 hearing on her emergency petition/motion for modification, our review of the circumstances of this case, in light of the required proofs cited above, leads us to conclude that a charge of direct criminal contempt cannot be sustained. With respect to the first element, our Supreme Court has defined misconduct as behavior that is "inappropriate to the role of the actor." **Commonwealth v. Garrison**, 386 A.2d 971, 979 (Pa. 1978). We find no case where an erroneous attempt to invoke the jurisdiction or venue of a particular court has been considered misbehavior amounting to direct criminal contempt.

We also conclude the second element of proof necessary for direct criminal contempt, *i.e.*, that the misbehavior be in the presence of the court, is problematic in this case. "Where formal proceedings have ended and the parties have exited the courtroom without causing any disturbance, and the record reflects no behavior that actually and significantly disrupted the

proceedings, it is beyond a court's power to hold a party in contempt for behavior that it only learns about subsequently." **Behr**, **supra** at 779-780.

Instantly, as the trial court noted, it only became aware of the Monroe County connection with the case from the court administrator after the August 20, 2013 proceeding, but before it entered its intended order of modification. N.T., 8/27/13, at 3. It is also clear that the trial court relied on non-record hearsay information in assessing Appellant's explanation of her actions. Appellant, in response to the trial court's questions at the August 27, 2013 rule-to-show-cause hearing, related her communications with her attorney, William Watkins, Esquire, relative to her *pro se* filings. **Id** at 4-6. In the midst of her answers, the trial court noted "[Attorney Watkins] told our Court Administrator that he talked to you and he said you wanted a Petition for Emergency Relief because of school matters and he told you that school matters are not a matter for emergency relief in Monroe County." **Id.** at 5. Thus, contrary to the standard articulated in **Behr**, the trial court here did not conclude that Appellant was in contempt based on misbehavior it observed in its presence, but relied on information provided by others after the subject proceeding.

Similarly, we conclude Appellant's conduct, even if less than candid and disingenuous with respect to the issue of venue, did not obstruct the trial court's proceeding on August 20, 2013, as required in the fourth element of direct criminal contempt.

- 11 -

> To obstruct justice, conduct *must significantly disrupt* proceedings. [C]ontempt requires actual, imminent prejudice to a fair proceeding or prejudice to the preservation of the court's orderly procedure and authority.

**Williams v. Williams**, 721 A.2d 1072, 1074 (Pa. 1998) (citations omitted).

Instantly, the trial court's frustration with Appellant, with which we are not unsympathetic, is not concerned with the orderly procedure or authority of the court. The August 20, 2013 hearing proceeded in good order. Rather, the problem is with the fundamental jurisdictional and procedural issues in the case for which the trial court and Father had recourse to civil sanctions or other types of relief for any vexatious conduct by Appellant. These, however are outside the purview of direct criminal contempt. "[A] trial court should not use the drastic sanction of finding a person in criminal contempt when a lesser measure will suffice." **In. Re C.W.**, 960 A.2d 458, 466 (Pa. Super. 2008).

For all the foregoing reasons, we conclude the trial court abused its discretion in finding Appellant in direct criminal contempt and imposing a fine of $500.00. We therefore reverse the trial court's August 27, 2013 order and Appellant is hereby discharged.

Order reversed. Appellant discharged. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/22/2014</u>