459 A.2d 421

**Stanley F. SCHMIDT**

**v.**

**Janet SCHMIDT, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1981.

Filed April 29, 1983.

Montemuro, J., filed concurring opinion.

Marvin Beshore, Harrisburg, for appellant.

Keith Rene Nonemaker, Hanover, for appellee.

Before BROSKY, WIEAND and MONTEMURO, JJ.

WIEAND, Judge: *

Can a twenty-six year old woman, who is a victim of Down's Syndrome and has the mental ability of a child between the ages of four and a half and eight years, be compelled by court order to visit a parent against her will? The trial judge concluded, in a thoughtful and concerned adjudication, that the daughter should be compelled to visit her father but only under circumstances carefully circumscribed by safeguards intended to protect her emotional and psychological well-being. Despite the care which the trial judge exercised in attempting to resolve this difficult issue, we are constrained to hold that an adult person cannot be compelled by judicial decree to visit a parent against his or her will.

Kimberly Schmidt was born March 4, 1957, the second of four children born of the marriage of Stanley and Janet Schmidt. Kimberly unfortunately suffered from Down's Syndrome, commonly known as mongolism.[1] Despite her affliction, Kimberly's life was relatively serene and her family relationships harmonious until marital problems developed between her parents. Stanley and Janet Schmidt ultimately settled into separate homes and have been living separate and apart since May, 1978. Following the separation of her parents, Kimberly resided with her mother. Considerable acrimony developed after the marital discord became apparent to the children, and Kimberly's siblings, two of whom at the time of the hearing continued to live with their mother, have refused to visit their father under any circumstances. Kimberly's relationship with her father, once pleasant, has deteriorated badly. She bases her present dislike for him and her unwillingness to visit him upon observed incidents of violence directed by her father against her mother, her brother, her sister's fiance, and

---

* The preparation of an opinion for the Court in this case was reassigned to the writer on February 24, 1983.

1. Application of the Peabody Picture Vocabulary Test suggested that Kimberly has a mental age of eight years, five months. The Slosson Intelligence Test demonstrated that her mental age is four years, eight months.

even the family pet. Kimberly now refers to her father as a "beast" and a "burglar". Her strongly expressed desires not to see her father were heard by lay and expert witnesses and were confirmed by Kimberly herself during an in camera session with the hearing judge. She has been examined and tested by several psychologists who are unanimous in reporting that Kimberly has a deep-seated dislike for and unwillingness to visit her father. Her father seems to generate within Kimberly strong feelings of anger and fear. The psychologists differ in their opinions as to whether enforced visitations will be harmful to Kimberly.

In *Fernald v. Fernald*, 224 Pa.Super. 93, 302 A.2d 470 (1973), it was held that a court has no authority to force an adult daughter to visit her father even though he has been making and she has been accepting voluntary contributions toward her support. This decision, although factually not on all fours with the instant case, is persuasive.

■ Kimberly Schmidt is chronologically an adult. She has not been adjudicated incompetent. Her mental limitations do not compel the conclusion that she lacks capacity to make rational decisions regarding parental preferences. Because she is an adult she enjoys many of the same rights and privileges enjoyed by other adult citizens. These include a constitutionally protected freedom of choice to make certain basic decisions regarding marriage, procreation, family life and privacy. See, e.g.: *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). This freedom of choice, it would seem, should include the same right which an adult has to refuse to visit a parent. In the absence of an adjudication of incompetency, a handicapped adult should not be deprived of the freedom to make for himself or herself the same family related decisions which other adults enjoy. Such a person has the same needs as other

adults for social approval, respect and privacy, as well as freedom to make important decisions regarding personal preferences and associates.

█ The fact that an adult child receives some or all of his or her support from a parent does not compel a contrary result. The duty to support a son or daughter is not dependent upon a right of visitation. See: *Myers v. Young,* 285 Pa.Super. 254, 427 A.2d 209 (1981); *Kramer v. Kelly,* 265 Pa.Super. 58, 68, 401 A.2d 799, 804 (1979); *Commonwealth ex rel. Mickey v. Mickey,* 220 Pa.Super. 39, 42, 280 A.2d 417, 419 (1971); *Commonwealth ex rel. Crane v. Rosenberger,* 212 Pa.Super. 144, 147, 239 A.2d 810, 812 (1968); *Commonwealth v. Mexal,* 201 Pa.Super. 457, 461, 193 A.2d 680, 682 (1963). The duty of support is based upon considerations broader in scope and more state and society oriented than those considerations which permit a father to visit children not in his custody. See: 59 Am Jur 2d, Parent and Child, § 51.

█ Finally, we acknowledge the practical difficulty of enforcing an order of visitation against an adult son or daughter, irrespective of mental age, who refuses to visit his or her father. Traditionally, orders allowing visitation between non-custodial parent and child have been enforced by contempt proceedings directed against the custodial parent. See: *In re Custody of Temos,* 304 Pa.Super. 82, 86–87, 450 A.2d 111, 113 (1982); *Simmons v. Simmons,* 232 Pa.Super. 365, 335 A.2d 764 (1975); *Commonwealth ex rel. Swinburne v. Mullen,* 193 Pa.Super. 237, 241, 163 A.2d 920, 922 (1960). However, visitation cannot similarly be enforced if a competent, adult son or daughter refuses to visit a parent. If the rule is to be different in cases where a son or daughter possesses a mental age which has not kept pace with his or her chronological age, for how long will the custodial parent be required to produce the person for visitation? Until the son or daughter reaches age 30? Age 50? Age 70? If the parent is not responsible for enforcing visitation against such a person, can an order for visitation be enforced by contempt proceedings brought directly

against an adult, handicapped son or daughter? If, for contempt purposes, the son or daughter must be deemed a child because of his or her reduced mental age, will it be accurate or fair to find such a person in wilful contempt? If, on the other hand, the son or daughter is judged according to his or her chronological age, doesn't it follow that he or she should have the privilege of deciding without court prompting whether to visit the parent?

The order compelling Kimberly Schmidt to visit her father against her will is reversed and set aside.

MONTEMURO, J., files a concurring opinion.

MONTEMURO, Judge, concurring:

I Concur. Although I agree with the reasoning and conclusion of Judge Wieand's opinion, I feel compelled to make these additional comments.

An adult such as Kimberly, with a mental age of four or eight, depending on the test, is still not a child. The mentally disabled adult is not placed with third grade children even though the mental age is that of an eight year old. The child whose mental and chronological age coincide, is expected to move from a given mental and social age to one significantly higher. This is accomplished by integrating the experiences in the family, the school, and the community, so that eventually the non-mentally disabled child can achieve full self sufficiency.

The mentally retarded person, on the other hand, changes but in a most limited measure. At twenty-five, the person with a mental age of eight has needs that are different from those of an eight year old child. The mentally retarded twenty-five year old needs stability, orderly living, and opportunities to feel useful. The needs are to affirm those objectives that are desirable for other adults. Clearly, the mentally retarded individual has the same desires as other adults for social approval, respect, and freedom in such matters as style of living, personal preferences, freedom of association, and choices of work. I submit that this free-

dom should only be curtailed where the decisions of the retarded adult are hazardous to himself or others. Where there is imminent danger, the role of society is a protective one; it does not intrude into other aspects of the person's life outside this narrow range. Society's role should never be a restrictive one that countermands or contradicts the wishes of the mentally retarded adult.