2007 OK 53

**In the Matter of the GUARDIANSHIP OF Danny HOLLY, a partially incapacitated adult.**

**Russell L. Mulinix, Sally Ketchum Edwards, and John B. Nicks, Nominated Attorneys, Appellants,**

v.

**Robert B. Sartin and Adam K. Marshall, Court–Appointed Attorneys; Robyn Owens; and Timothy E. Houchin, Limited Guardian, Appellees.**

No. 103,840.

Supreme Court of Oklahoma.

June 26, 2007.

Russell L. Mulinix, Sally Ketchum Edwards, Mulinix Ogden Hall Andrews & Ludlam, Oklahoma City, OK, and John B. Nicks, Tulsa, OK, for Appellants.

Robert B. Sartin, Adam K. Marshall, Cori D. Powell, Barrow & Grimm, P.C., Tulsa, OK, for Appellees Court–Appointed Attorneys.

Robyn Owens, George W. Owens, and Randall E. Rose, The Owens Law Firm, P.C., Tulsa, OK, for Appellee Robyn Owens.

Timothy E. Houchin, University of Tulsa Boesche Legal Clinic, Tulsa, OK, for Appellee Limited Guardian.

COLBERT, J.

¶ 1 Danny Holly is a 58–year–old man who is partially incapacitated from a head injury he sustained in a motor vehicle accident in 1999. Mr. Holly's wife died and his daughter was seriously injured in the same accident. Because of the extent of Mr. Holly's injuries, a general guardian was appointed over his person and property. Although her injuries initially prevented her from serving as her father's general guardian, Mr. Holly's daugh-

ter, Ashely Holly Goodner, was appointed general guardian after she recovered. In the ensuing years, Mr. Holly was confined first to rehabilitation hospitals and then to assisted living facilities.

¶ 2 Mr. Holly's share of the settlement proceeds from the accident exceeded $6 million. In late 2003, Mr. Holly began attempting to assume some control over his person and property. He retained the services, with court approval, of Robert B. Sartin and Adam K. Marshall of the Barrow & Grimm law firm ("Court–Appointed Attorneys"). Mr. Holly applied for the termination of the guardianship, but reached a court-approved settlement in 2005 with his daughter that allowed him to regain a significant amount of control over his life while remaining subject to a limited guardianship over his person. Under the agreement, Mr. Holly could leave the assisted living facility, buy a house and a car, and gain control of a sizable monthly allowance while placing the corpus of his estate in two irrevocable trusts. Pursuant to the agreement, the district court partially restored Mr. Holly's capacity,[1] terminated the general guardianship, and appointed Timothy E. Houchin ("Limited Guardian") as the limited guardian of Mr. Holly's person to protect his interests and assist him with health care and other major decisions.

¶ 3 In the hearing on the agreed settlement, the trial court declared Mr. Holly "competent to manage his financial resources, as well as his medical and psychiatric care." In its order, the court also waived

bond and gave the Limited Guardian the following powers and duties:

> (i) monitor and meet [Mr. Holly's] health care requirements; (ii) provide for his safe living environment; (iii) coordinate medical services for him; (iv) protect his rights; (v) assist him in fulfilling his civic duties; (vi) obtaining any necessary services; and (vii) take any and all other actions necessary to the exercise of the above powers and controls in his service as limited guardian of the person of the Ward not otherwise prohibited by 30 O.S. § 3–119.

The court concluded that Mr. Holly "lacks the capacity without assistance to prudently consider and make decisions regarding the contractual obligation of more than modest pecuniary amounts" and, as a result, required him to obtain the Limited Guardian's assistance and approval of contracts exceeding $10,000. Nevertheless, the monthly allowance Mr. Holly received was approximately $25,000 and the court provided that Mr. Holly should have exclusive control of this allowance. The court further provided that Mr. Holly "shall have all the rights, duties, powers, and controls over his person except as modified or qualified by the limited guardianship."

¶ 4 In the summer of 2006, Mr. Holly became dissatisfied with the Court–Appointed Attorneys and the Limited Guardian. He contacted and retained attorneys Russell L. Mulinix, Sally Ketchum Edwards, and John Nicks ("Nominated Attorneys"). According to the Court–Appointed Attorneys and the Limited Guardian (together with Robyn Ow-

---

1. In finding that Mr. Holly had the capacity to create the multi-million dollar trusts and amend his will, the court relied on the report of Mark D. Fossey, M.D., a psychiatrist, who concluded:

    Mr. Holly is partially incapacitated by his head injury.... However, ... it is also my opinion that Mr. Holly has the ability to receive and evaluate information effectively and is able to communicate responsible decisions. He has the capacity to meet essential requirements for his physical health and safety and is able to manage his financial resources. During my interview he admitted that he was not skilled in handling finances but he outlined a reasonable plan to involve people he trusted to assist him in managing his money safely and effectively. Mr. Holly expressed an interest in building a house and buying a new pick-up truck and a red corvette. He emphasized his

desire to invest the money. While he did express irritation with his daughter for restricting his access to his money, he indicated that he did want to treat her fairly, if he is found to be competent, both during his life and after his death. [He] is aware of his memory problems and also his need to take medications for his medical conditions and his depression.

The trial court made the following finding of fact:

    The Ward specifically has sufficient capacity with the assistance and approval of the Proposed Limited Guardian to establish a trust or trusts pursuant to a trust instrument approved by a court having jurisdiction over Ward's limited guardianship, transfer the assets of his estate to such trust or trusts, execute a codicil or codicils to Ward's Last Will and Testament pursuant to a form approved by a court having jurisdiction over Ward's limited guardianship.

ens, Ashely Holly Goodner's attorney, "Appellees"), Mr. Holly began refusing to speak with them after he met with the Nominated Attorneys.

¶ 5 On July 31, 2006, the Court–Appointed Attorneys requested an order releasing Mr. Holly's medical and psychological records. According to Appellees, this order was necessary because Mr. Holly was diagnosed with renal cell carcinoma in the summer of 2006. Although the request stated that it was made with Mr. Holly's approval, the certificate of mailing contains no indication that Mr. Holly received notice and Mr. Holly has denied receiving any notice about the request. Formal notice was sent to the Limited Guardian and Ms. Owens. The district court issued the requested order on August 8, 2006. Again, the record contains no indication that Mr. Holly was notified of the order.

¶ 6 On August 14, 2006, the Court–Appointed Attorneys filed a request for reappointment of counsel. This request does not claim that Mr. Holly approved it, although the Court–Appointed Attorneys have stated that Mr. Holly affirmed in an earlier meeting that he still considered them to be his attorneys. The certificate of mailing, however, contains no indication that Mr. Holly received formal notice of the request and Mr. Holly has denied receiving notice. The request was approved by an order entered the same day. Although language in the order states that Mr. Holly desired continued representation, there is no indication that Mr. Holly was present when the request was made or that the court inquired about his absence or approval before entering the order. Again, there is no indication that Mr. Holly received notice of the entry of the order.

¶ 7 Finally, the Limited Guardian filed a petition on August 29, 2006, for the appointment of special guardians over Mr. Holly's person and estate. He alleged:

4. . . . [T]he Ward has failed to take prescribed medications, specifically anti-psychotic and anti-depressant medications, has purchased a handgun, and has threatened the lives of certain people the Ward believes intend to harm him. Additionally, Petitioner has reason to believe the Ward

is the target of overreaching and undue influence.

5. The Ward has recently received a diagnosis of renal cell carcinoma and is in need of a second opinion and medical treatment.

6. The Ward failed to attend a scheduled meeting today, August 29, 2006, in Tulsa concerning his assets held by Bank of America. Petitioner believes the Ward does not intend to attend scheduled medical appointments in Tulsa in the coming days.

The petition was granted the same day it was filed with an order appointing the Limited Guardian as special guardian over Mr. Holly's person and Philip Bayouth as special guardian over Mr. Holly's estate and ratifying the appointment of the Court–Appointed Attorneys. The order stated that notice had been waived by the court.

¶ 8 The district court waived bond and set a hearing on the appointment of the special guardians on September 19, 2006. The formal affidavit of mailing states that copies of the petition for appointment of special guardians, the order appointing the special guardians, and the letters of special guardianship were mailed to Mr. Holly's daughter, the Limited (now special) Guardian over Mr. Holly's person, the special guardian over Mr. Holly's estate, and the Court–Appointed Attorneys. According to the affidavit of mailing, Mr. Holly was not given formal notice of the appointment of the special guardians or the date of the hearing and Mr. Holly has denied receiving any kind of notice. The special guardians immediately took control of approximately $75,000 Mr. Holly had accumulated in his personal checking account. Again, Mr. Holly denies receiving any notice of this action.

¶ 9 The Nominated Attorneys filed entries of appearance on Mr. Holly's behalf on August 30, 2006, and September 1, 2006. They then filed a "Nomination of Attorneys to Represent Ward" and a "Petition to Restore Capacity" on September 7, 2006. The Nominated Attorneys asserted that the Court–Appointed Attorneys had obtained reappointment as Mr. Holly's counsel without notice to

him, had obtained the order allowing them to release Mr. Holly's medical records without notice to him and without giving him an opportunity to attend the hearing on the issue, and had been present when the special guardians were appointed and had failed to notify Mr. Holly of the hearing and the resulting order. The Nominated Attorneys also claimed that Court–Appointed attorneys had approved orders granting payment of the Limited Guardian's fees and expenses totaling thousands of dollars without informing Mr. Holly.[2] Hearings on the nomination and petition to restore capacity were set for the same day as the hearing on the special guardianship, September 19, 2006.

¶ 10 The hearing originally scheduled for September 19, 2006, was moved when the original trial judge recused himself. The district court set a hearing on September 22, 2006, on the nomination of attorneys and fee applications by the Court–Appointed Attorneys and the Limited Guardian.[3] The hearing on the special guardianship and the petition for restoration to capacity was delayed to October 19, 2006.

¶ 11 On September 19, 2006, the Nominated Attorneys filed a request for immediate relief regarding a dispute as to the guardianship plan. They sought the return of the $75,000 removed from Mr. Holly's checking account by the special guardian of his estate. The Nominated Attorneys asked that the matter be added to those already scheduled for hearing on September 22, 2006. On September 21, 2006, the Nominated Attorneys filed a supplemental emergency motion to vacate the special guardianship over Mr. Holly's property. The Nominated Attorneys pointed out that the special guardianship expired on September 19, 2006, by its own terms and by operation of Okla. Stat. tit. 30, § 3–115(F) (2001), and that no petition for appointment of guardian was pending.

¶ 12 Mr. Holly appeared at the hearing on September 22, 2006, as did an expert witness prepared to testify regarding his competence. The trial court concluded, however, based only on the arguments of the attorneys, that the Nominated Attorneys had conflicts of interest and would not be allowed to represent Mr. Holly. The court refused to consider evidence of Mr. Holly's capacity to hire attorneys as he saw fit and the Nominated Attorneys' independence despite repeated requests to do so. The other pending matters were deferred to a later date.

¶ 13 The Nominated Attorneys filed an emergency motion to reconsider, which was denied without hearing on the day of filing, September 26, 2006. A copy of that order was mailed to Mr. Holly. The order formally sustaining Appellees' objections to Mr. Holly's nomination of attorneys was signed and filed on October 4, 2006. The order provided simply that "the Nominated Attorneys have a conflict of interest that would preclude representation by Ward's attorneys of nomination." The order further granted the Court–Appointed Attorneys' request for fees of $15,904.85, but concluded Mr. Holly had not received proper notice of the Limited Guardian's latest application for fees and expenses and ordered the Limited Guardian to give proper notice and request a new hearing date.

¶ 14 On October 6, 2006, the Nominated Attorneys filed an application for this Court to assume original jurisdiction and a petition for writ of mandamus. The parties appeared

---

2. The record on appeal contains three of these applications and the "agreed" orders approving fees totaling $13,950. A fourth order, predating those in the record, was entered on December 27, 2005. That application and order are reflected in a docket sheet made part of the record, but there is no record of the dollar amount. There is nothing in the record to indicate that Mr. Holly received notice of any of the applications or orders and he denies receiving notice. Even though the Court–Appointed Attorneys should have been passing documents and information along to Mr. Holly, their own billing records—attached to their request for court approval of fees and expenses—indicate that they did not do so as they performed no services for Mr. Holly from August 29, 2005, until July 12, 2006.

3. On September 8, 2006, the Court–Appointed Attorneys filed an application for fees and expenses of $15,904.85. The affidavit of mailing reflects no notice to Mr. Holly. On September 20, 2006, the Limited Guardian filed a fifth application for fees and expenses of $6,225. Once again, the affidavit of mailing reflects no notice to Mr. Holly.

for a hearing before a Supreme Court referee on October 12, 2006.

¶ 15 On October 19, 2006, the Limited Guardian filed a "Combined Petition for Appointment of Special Guardians and for Appointment of Limited Guardians of the Person and Estate." The petition contains a list of "Persons Entitled to Notice of this Petition." *Once again, Mr. Holly is not listed as a person entitled to notice.* That same day, October 19, 2006, the trial court vacated the original letters of special guardianship, "reappointed" the same special guardians, and issued new letters of special guardianship set to expire on November 13, 2006.[4] The trial court scheduled a hearing on the appointment of limited guardians for November 13th and ordered notice of the hearing sent to Mr. Holly.

¶ 16 On October 23, 2006, this Court recast the original proceeding filed by the Nominated Attorneys as a timely appeal and set a briefing schedule. We ordered the parties to specifically address whether this matter should be governed by the principles set forth by this Court in *In re Towne,* 2000 OK 30, 3 P.3d 154.

¶ 17 On November 9, 2006, the Nominated Attorneys filed an emergency motion to stay the district court proceedings pending appeal. They informed this Court of the reissued letters of special guardianship and the pending hearing. In response, this Court issued an order on November 13, 2006, granting the emergency petition and arresting all proceedings pending before the district court for the duration of the appeal or until further order. Also on November 13, 2006, however, and *after* this Court stayed the proceedings in district court, the district court entered a temporary order naming limited guardians of Mr. Holly's estate and person and issued the corresponding temporary letters of guardianship.[5]

¶ 18 On November 15, 2006, the Nominated Attorneys filed another emergency motion with this Court to set aside the district court's November 13, 2006, order.[6] On No-

---

4. By statute, special guardianships can last a maximum of 30 days. Okla. Stat. tit. 30, § 3–115 (2001). The statute makes no provision for an extension, even by agreement, or a second special guardianship. *Id.* By the time the district court in this matter allowed the special guardianships to expire, Mr. Holly had been under a special guardianship for 77 days without any opportunity to present evidence or otherwise dispute the allegations made by the Limited Guardian.

5. The temporary letters of limited guardianship provided that Mr. Holly "may not enter into any contract having a value in excess of *$10,000 per month* unless approved by the Limited Guardian and subject to Court approval." (Emphasis added.) This is a dramatic change from the original limited guardianship which limited Mr. Holly's ability to enter into any contract with a *total* value of $10,000. Once again, the order indicates that Mr. Holly was not present at the hearing and that the court made no inquiry into his absence.

6. The Nominated Attorneys made the following assertions regarding the events of November 13th:

3. On November 9, 2006, oral arguments were heard [on the Nominated Attorneys' original emergency motion] and the matter was taken under advisement. The parties were advised to report the decision of Special Judge Haskins on the Motion to Stay [hearing on petition to appoint of a limited guardian] directly to the Oklahoma Supreme Court as soon as a determination was made.

4. On November 13, 2006, the Letters of Special Guardianship expired at 12:00 noon pursuant to the specific terms of the Order Appointed Special Guardians....

5. On Special Judge Haskins' November 13, 2006 dockets were two (2) matters relating to the guardianship. The Motion to Stay the Hearing on the Petition for Appointment of Limited Guardian and the Petition for Appointment of Limited Guardian of the Person and the Estate for Danny Holly were both scheduled for hearing at 12:00 noon.

6. Prior to the hearing, the Special Appearance and Objection to Hearing on Combined Petition for Appointment of Special Guardians and for Appointment of Limited Guardians of the Person and Estate and Brief in Support was filed by Danny Holly objecting to the notice that had been given him of the hearing on the Petition for Appointment of Limited Guardian raising the issue of the deficient notice and the lack of jurisdiction due to the defective notice given the Ward....

7. After the Letters of Special Guardianship had expired, Special Judge Haskins denied the Motion to Stay the Hearing at approximately 12:30 p.m. After signing an Order Denying Motion to Stay, Special Judge Haskins excluded [the Nominated Attorneys] from the courtroom and from any further proceedings in the case. This occurred at approximately 12:30 p.m.....

8. The Order Denying the Motion to Stay was sent via facsimile to the Oklahoma Su-

vember 27, 2006, this Court entered an order suspending all orders entered by the trial court after the filing of the appeal on October 6, 2006. This matter is now at issue on the merits.

## STANDARD OF REVIEW

■ ¶ 19 We will reverse a guardianship order only if it is clearly against the weight of the evidence or contrary to law. *Gould v. Smith,* 1965 OK 112, ¶ 0, 405 P.2d 82, 83 (syl. 2 by the Court). The dispositive issue in this appeal is one of law-whether this guardianship proceeding was conducted in violation of the ward's constitutional right to due process of law. The subjects of guardianship proceedings must be particularly afforded due process and the proceedings must "comport with constitutional notions of substantial justice and fair play." *In re Guardianship of Deere,* 1985 OK 86, ¶ 7, 708 P.2d 1123, 1126; *see also Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). We review this issue *de novo,* conducting an independent review without deference to the trial court's legal rulings. *In re A.M.,* 2000 OK 82, ¶ 6, 13 P.3d 484, 486–87.

## DISCUSSION

■ ¶ 20 Before we can consider the substantive arguments, we must first address Appellees' assumption that the hearing on Mr. Holly's nomination of attorneys was an evidentiary hearing. *It was not.* Despite

repeated requests by the Nominated Attorneys, the trial court refused to allow them to present any evidence in support of Mr. Holly's application to nominate them as his attorneys. Unsworn, in-court statements by attorneys acting as advocates are not evidence. *Norman v. Trison Dev. Corp.,* 1992 OK 67, ¶ 12 n. 26, 832 P.2d 6, 11 n. 26; *see also State v. Torres,* 2004 OK 12, ¶ 18, 87 P.3d 572, 582 ("tantalizing suggestions regarding the existence of facts" are no substitute for evidence). The trial judge's declaration that "I see no reason to swear in all of the attorneys. You are all officers of the Court," does not transform the arguments of attorneys into testimony. *See Torres,* 2004 OK 12, ¶ 29, 87 P.3d at 585.

¶ 21 The absence of an evidentiary hearing resolves most of the arguments on appeal. However, the nature of this case requires us to address the procedural requirements that must be observed when a ward seeks to replace his court-appointed counsel. Indeed, the procedural conduct of Mr. Holly's guardianship is so fraught with error that it demands a response from this Court.

■■ ¶ 22 In *In re Towne,* 2000 OK 30, 3 P.3d 154, we held that a prospective ward is entitled to an attorney of his own choice unless the trial court concludes after an evidentiary hearing that the attorney is not independent or has a conflict of interest. The court's refusal to allow the attorney to present evidence and witnesses was, by itself,

---

preme Court. This occurred at approximately 12:31 p.m.

9. The Oklahoma Supreme Court entered its Order granting Appellant's Emergency Motion for Stay Pending Appeal, arresting all proceedings pending before the District Court. This was forwarded to [the Nominated Attorneys] at the Tulsa County Law Library at approximately 1:27 p.m. The Order was immediately filed with the Tulsa County Court Clerk and a file stamped copy was then hand delivered to Special Judge Haskins.... This hand delivery was made within 30 minutes of the Order being entered by the Oklahoma Supreme Court....

10. After the nominated attorneys were excluded from the courtroom by Special Judge Haskins at 12:30 p.m., he apparently found it appropriate to rule, at 12:45, to enter a Temporary Order Appointing Limited Guardian of the Estate appointing Phillip Bayouth as the Limited Guardian of the Estate of Danny Holly and

waived any bond in this matter, and further appears to have attempted to reappoint Tim Houchin as Limited Guardian of the Person of Danny Holly, again without any bond required....

\* \*

14. The Temporary Order Appointing Limited Guardian of the Estate was filed with the Tulsa County Court Clerk at approximately 4:50 p.m. more than two (2) hours after the Order of the Oklahoma Supreme Court was issued and after the attorneys of record and Special Judge Haskins had been delivered a copy of the Order of the Oklahoma Supreme Court and after they had been advised it had been filed with the Tulsa County Court Clerk. The Nominated Attorneys also advised this Court that the Court–Appointed Attorneys stated that they did not believe this Court's order affected the district court's temporary order and that they intended to continue the guardianship.

a denial of the prospective ward's fundamental right to due process. *Id.* ¶ 19, 3 P.3d at 162. We reject Appellees' assertion that this right to an attorney of one's own choosing does not extend with the same force to a person who has already been declared a ward in a guardianship proceeding. The "massive curtailment of liberty" associated with a guardianship proceeding continues as long as that guardianship persists. *Id.* ¶ 12, 3 P.3d at 159. The proceedings must continue to be conducted with the utmost care to ensure that the ward subject to that curtailment receives due process.

■ ¶ 23 Oklahoma's guardianship statutes provide that the ward is entitled to an attorney of his own choosing and mandate the continuation of the procedural safeguards of the ward's rights after a guardian is appointed. Okla. Stat. tit. 30, §§ 3–106, 3–107, 3–109, & 3–110 (2001). The purpose of a guardianship is to allow the ward to participate, "as fully as possible," in the decisions affecting him. Okla. Stat. tit. 30, § 1–103(B) (2001). The guardianship statutes *require* the trial court to replace a court-appointed attorney with an attorney of the ward's choosing in most instances. *Id.* § 3–107(E)(2). There are four steps in the process through which a ward's choice of attorney is approved by the court. First, the ward may choose an attorney.[7] *Id.* § 3–107(E)(2)(a). Second, the preferred attorney must accept the responsibility. *Id.* § 3–107(E)(2)(b). Third, the ward or the preferred attorney must inform the court. *Id.* § 3–107(E)(2)(c). Finally, if the ward's preference is challenged, the court must conduct "a meaningful evidentiary hearing in the context of [an] orderly adversarial procedure" to determine if the preferred attorney is independent and free from conflicts of interest. *Towne*, 2000 OK 30, ¶ 16, 3 P.3d at 161 (emphasis omitted).

¶ 24 We reject Appellees' argument that requiring the trial court to conduct a full hearing regarding Mr. Holly's desire to re-

place his Court–Appointed Attorneys would mean that the parties may have to fight this battle repeatedly at great expense because Mr. Holly may want to change attorneys too often. Messiness has never been a valid reason for dispensing with one's fundamental rights. Indeed, it is often a hallmark of the assertion of those rights. Moreover, Mr. Holly has apparently sought the removal of an attorney only once before, a choice which resulted in the withdrawal of that attorney, the restoration of a substantial degree of legal capacity to Mr. Holly, and the appointment of the attorneys chosen by Mr. Holly— those very same Court–Appointed Attorneys who fight this matter.

¶ 25 As we have already observed, the trial court had no evidentiary basis for its conclusion that the Nominated Attorneys had a conflict of interest that prevented them from representing Mr. Holly. Appellees, however, contend that the Nominated Attorneys have an irreconcilable conflict of interest because they allegedly violated several of the Oklahoma Rules of Professional Conduct. Because of the severity of those allegations, we are compelled to address them even though there is no evidence to support them.

¶ 26 First, Appellees contend the Nominated Attorneys violated Rule 4.2 by meeting with Mr. Holly without the knowledge or consent of the Court–Appointed Attorneys. Rule 4.2 provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Rule 4.2, Oklahoma Rules of Professional Conduct, Okla. Stat. tit. 5, ch. 1, app. 3–A (2001). The application of this rule is dependent upon the evidence and there was no evidence before the district court about the circumstances under which Mr. Holly re-

---

7. This assumes that a ward has the capacity to make a knowing choice. In this case, Mr. Holly had been partially restored to capacity and the limitations on his capacity, as set forth in the order that created the limited guardianship, placed no limitation on his ability to contact and

retain new attorneys. Further, a finding that a ward lacks the capacity to prefer one attorney over another should not be entered lightly and must be based on a meaningful evidentiary hearing. *In re Towne*, 2000 OK 30, ¶ 16, 3 P.3d 154, 161.

tained the Nominated Attorneys. Further, it is not clear that the Court–Appointed Attorneys were actively representing Mr. Holly when he began meeting with the Nominated Attorneys. In fact, the Court–Appointed Attorneys were uncertain enough about their status that they sought and obtained a court order to reappoint them as Mr. Holly's attorneys as soon as they learned of Mr. Holly's contacts with the Nominated Attorneys.

■ ¶ 27 Appellees also contend the Nominated Attorneys violated the spirit of Rule 1.14 by meeting with a client under a disability without consulting with the Limited Guardian or seeking his approval. They point to a comment to Rule 1.14 that provides, "If a legal representative has already been appointed for a client, the lawyer should ordinarily look to the representative for decisions on behalf of the client." This argument ignores the limited nature of the Limited Guardian's powers and the fact that Mr. Holly had regained a substantial degree of capacity in 2005. The order creating the Limited Guardianship recognized that Mr. Holly retained "all the rights, duties, powers, and controls over his person except as modified or qualified by the limited guardianship." Nothing gave the Limited Guardian the authority to refuse to permit Mr. Holly to meet with other attorneys. While Mr. Holly needed the Limited Guardian's advice and approval before he could enter a contract exceeding $10,000, the record contains no evidence that he did so in his contacts with the Nominated Attorneys.[8] Further, the comments to Rule 1.14 recognize that attorneys have to carefully weigh any decision to consult with the guardian if the ward complains that the guardian is not properly fulfilling his duties.

¶ 28 Finally, Appellees contend that the Nominated Attorneys have violated Rule 1.7 regarding representation materially limited by responsibilities to another or self interest.

In making this argument, they allege that Mr. Holly was introduced to Russell Mulinix (one of the Nominated Attorneys) by an old army buddy who happens to be Mulinix's brother. They also assert that Mulinix's sister was the real estate broker when Mr. Holly purchased his home. In making this argument, Appellees repeat their unsubstantiated allegations regarding individuals who have allegedly attempted to take advantage of Mr. Holly in the past and assumptions regarding the motivations of those who are involved with Mr. Holly now.[9] Allegations of fact, unsupported by evidence, do not support a finding that there is a legal conflict of interest. *See Torres*, 2004 OK 12, ¶¶ 18 & 29, 87 P.3d at 582 & 585; *Norman*, 1992 OK 67, ¶ 12 n. 26, 832 P.2d at 11 n. 26. The record contains no basis for concluding that the Nominated Attorneys' representation of Mr. Holly would be limited by their responsibilities to others or by their self-interest.

## CONCLUSION

■■ ¶ 29 The special guardianships of Mr. Holly's estate and person have long since expired by operation of law. Okla. Stat. tit. 30, § 3–115 (2001). The order denying Mr. Holly's nomination of attorneys is vacated. All orders entered by the district court after the Nominated Attorneys filed this matter on October 6, 2006, are vacated. These include, without limitation: (1) the order of October 9, 2006, granting the Limited Guardian's application for payment of fees and expenses; (2) the order of October 19, 2006, approving medical procedures; (3) the order of October 19, 2006, appointing special guardians and the corresponding letters of special guardianship; and (4) the orders of November 13, 2006, denying Appellant's motion to stay the hearing on the petition for limited guardianship, approving the interim accounting of the special guardian of the estate, and appointing a temporary limited guardian of the estate of

---

8. The protestations of Appellees that Mr. Holly's agreement with the Nominated Attorneys must contemplate exceeding $10,000 is somewhat ironic as the Court–Appointed Attorneys have received court approval for attorney fees of nearly $16,000 for a client they admittedly had little to do with in the year since the limited guardianship was imposed.

9. Of note is that one of those allegations, communicated by the Court–Appointed Attorneys to Dale Jeffus (a psychologist who conducted a neuropsychological evaluation of Mr. Holly on September 14–15, 2006), was that the Limited Guardian improperly solicited a $5,000 donation from Mr. Holly for a charity for which the Limited Guardian was a board member.

Mr. Holly and the corresponding letters of guardianship. We are aware that vacating these orders will create some uncertainty regarding the status of actions taken pursuant to these orders, but the degree to which Mr. Holly has been denied the appropriate process leaves us with no alternative.[10]

¶ 30 This matter is remanded to the district court which shall conduct an evidentiary hearing on Mr. Holly's nomination of attorneys, with sworn testimony and relevant documentary evidence. We remind the parties and the district court that guardianship proceedings are conducted for the benefit of the ward, not for the convenience of the court, the attorneys, or the guardians.

**THE JUDGMENT OF THE DISTRICT COURT IS VACATED AND THE MATTER IS REMANDED FOR FURTHER PROCEEDINGS IN ACCORD WITH THIS OPINION**

ALL JUSTICES CONCUR.

---

10. Based on the record provided to this Court on appeal, none of the proceedings conducted since the order creating the limited guardianship appear to comport with a minimum of due process. A ward is entitled to personal notice and a meaningful opportunity to participate in all guardianship proceedings. Service upon the ward's attorney is a separate requirement and does not satisfy the requirement that the ward receive personal notice. Okla. Stat. tit. 30, § 3–110(A)(2)(b) (2001); *see* Okla. Stat. tit. 12, § 2005(B) (2001) ("Whenever ... service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney *unless service upon the party himself is ordered by the court.*" (emphasis added)). If the ward is not present at a hearing, the trial court has a duty to inquire about his absence and proceed only when "there is sufficient cause to waive the right to be present." Okla. Stat. tit. 30, § 3–106(B) (2001). Further, the Court–Appointed Attorneys' argument in this case that they could not inform Mr. Holly of the petitions and hearings because he would not speak to them is disingenuous since such notice can be (and frequently is) delivered by mail.