2013 OK CIV APP 39

In re GUARDIANSHIP OF Kandee Ann Mary Catherine BOROVETZ.

Kandee Ann Mary Catherine Borovetz, Ward, Applicant/Appellant,

v.

Frank Borovetz, Jr., Limited Co–Guardian, Respondent/Appellee.

No. 110,304.

Court of Civil Appeals of Oklahoma, Division No. 1.

March 29, 2013.

D.E. Dismukes, Tulsa, Oklahoma, for Applicant/Appellant,

D.D. Hayes, Muskogee, Oklahoma, for Respondent/Appellee.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Kandee Ann Mary Catherine Borovetz (Ward) appeals the trial court's denial of her Application to Terminate or Modify Limited Co–Guardianship, in which Ward sought to have Respondent Frank Borovetz, Jr. (Father) removed as a limited co-guardian of Ward. The trial court's order requiring Ward to continue visitation with Father is contrary to law and we reverse that part of the order. The parties have informed the court that during the pendency of the appeal, Ward's other limited co-guardian, Marvelene Boro-

vetz (Mother), has died. We reverse and remand for a new hearing to consider the appointment of a limited guardian for Ward.[1]

¶2 Ward is the adult daughter of Mother and Father. In 1998, the trial court found Ward was a partially incapacitated person and appointed Mother and Father as her limited co-guardians. The 1998 order made Mother the primary limited co-guardian, authorized to oversee Ward's basic needs and to assist her in decisions on her residence, health, safety, and financial resources. The 1998 order authorized Father to oversee and assist Ward in decisions regarding quality of life, education, and socialization, as well as to make arrangements for counseling, vocational and rehabilitation services, and social activities. Ward lived with Mother, and the Order Approving Guardianship Plan directed that Father "have access to" Ward every other weekend in order to carry out his duties as co-guardian, which the parties and the trial court treated as a visitation order.

¶3 Ward filed her Application to Terminate or Modify Limited Co–Guardianship in July 2011. Ward asserted that her relationship with Father had deteriorated to the point that the twice-monthly visitation had begun to adversely affect Ward's health. Ward asked the court to either terminate Father's limited co-guardianship or terminate the requirement that Ward have visitation with Father.

¶4 Following a hearing, the trial court issued its Order November 30, 2011, in which it denied Ward's application to terminate Father as a co-guardian. The order further directed that Ward's visitation with Father "should resume as soon as possible . . ." The trial court denied Ward's motion to vacate its order January 5, 2012 and she now appeals.

¶5 During the pendency of the appeal, Ward sought to have the visitation order stayed, which the Oklahoma Supreme Court granted June 18, 2012. The appeal was assigned to this court January 10, 2013. Father filed his Emergency Motion to Lift or Vacate Stay February 19, 2013. Father asserted that Mother died in February 2013, leaving him as the remaining limited co-guardian. He alleged he had filed petitions to be named sole limited guardian or sole guardian, and he was concerned that those petitions violated the June 18, 2012 stay of the proceedings. Ward responded, agreeing Mother had died, but contending Ward was in a safe home and her sister was managing her financial affairs, so that no emergency existed requiring lifting the stay. Because we reverse and remand for further proceedings, we find Father's Emergency Motion to Lift or Vacate Stay is moot.

¶6 We review an order on a motion to terminate a guardianship to determine whether it is against the clear weight of the evidence or contrary to law. *In re Guardianship of C.D.A.*, 2009 OK 47, 212 P.3d 1207.

¶7 "A guardian is a person appointed by the court to take care of the person or property of another." 30 O.S.2011 § 1–105. Under the Oklahoma Guardianship and Conservatorship Act, guardians may be general, limited, or special. 30 O.S.2011 § 1–108. In this case, Ward has been judicially determined to be partially incapacitated, and she is therefore subject to a limited guardianship.[2] A limited guardian is authorized to

---

1. While Ward has appealed the trial court's denial of her motion to terminate Father as co-guardian, she admits she is a partially incapacitated person and has not sought to terminate the limited guardianship *in toto*. Therefore, we have not considered the legal propriety of the limited guardianship.

2. The Act defines "partially incapacitated person" as:

   an incapacitated person whose impairment is only to the extent that without the assistance of a limited guardian said person is unable to:
   a. meet the essential requirements for his physical health or safety, or

b. manage all of his financial resources or to engage in all of the activities necessary for the effective management of his financial resources.

A finding that an individual is a partially incapacitated person shall not constitute a finding of legal incompetence. A partially incapacitated person shall be legally competent in all areas other than the area or areas specified by the court in its dispositional or subsequent orders. Such person shall retain all legal rights and abilities other than those expressly limited or curtailed in said orders; . . . .

The Act defines "limited guardian" as:

exercise limited powers over the person and/or property of the ward within the state. 30 O.S.2011 § 1–109(B).

¶ 8 In her appeal, Ward first contends the trial court erred in forcing her to continue visitation with Father. Ward notes that the Act provides, in two sections, that a limited guardian shall not have custody of a ward.[3] Additionally, the Act provides that a limited guardian of a partially incapacitated person shall assure that the ward resides "in the least restrictive, most normal setting consistent with the requirements for his health or safety." 30 O.S.2011 § 3–118(B)(1)(b). Ward presented medical evidence to support her contention that the visitation causes stress and anxiety and is therefore detrimental to her health. Father responds that visitation is necessary for him to fulfill his duties under the Guardianship Plan. Father has not presented authority supporting enforced overnight visitation between a ward and her limited co-guardian.[4] We agree that if Father remains as a limited co-guardian, he may require reasonable access to Ward to fulfill his duties, but forcing Ward to submit to twice monthly weekend visitation at Father's house against her will is contrary to the Act and is detrimental to Ward's health. We therefore reverse the denial of Ward's request to terminate visitation with Father.

¶ 9 Ward's other claim on appeal is that the trial court erred in denying her request to terminate Father's status as limited co-guardian. As noted above, the parties have informed this court that Mother has died during the pendency of the appeal. The Act provides that on the death of one joint guardian, the power continues in the survivor until a further appointment is made by the court. 30 O.S.2011 § 4–503. In this case there is currently no limited guardian with the authority granted to Mother in the Guardianship Plan. We therefore reverse and remand for a new hearing to consider appointment of a limited guardian for Ward

a person appointed by the court to serve as the guardian of a partially incapacitated person and who is authorized by the court to exercise only:
a. some of the powers of a guardian of the person or whose power as guardian of the person extends only to certain matters pertaining to the care or control of the ward as specified by the court, or
b. certain powers as guardian of the property over the estate or financial resources of the ward, or whose powers as guardian of the property extend only to some portion of the estate or financial resources of the ward.
30 O.S.2011 § 1–111.

3. 30 O.S.2011 § 1–120 provides (emphasis added):

A. A guardian, including a special guardian, of the person is charged with the custody of the ward, and must look to the support, health and education of the ward. Except as provided by Section 3–113 of this title, he may fix the place of abode of the ward at any place within the county, but not elsewhere, without permission of the court and any change in the place of abode of a ward within the county shall be reported to the court.
B. *Limited guardians of partially incapacitated persons shall not have custody of the person of the ward* and shall have only those powers or controls over the person of the ward specifically ordered in a dispositional order or other order of the court.

30 O.S.2011 § 3–114 provides (emphasis added):
A. The court may assign to a limited guardian of the person any portion of the powers and duties of a general guardian of the person *except the power to take custody of the person of the ward.* The court may also assign to the limited guardian the duty to assist the ward in those particular areas in which the capacity of the ward is impaired including, but not limited to, the duty to assist the ward in:
1. meeting the requirements for his health or safety;
2. protecting his rights;
3. obtaining necessary services;
4. fulfilling his civic duties; and
5. any other areas as determined necessary by the court and which are not specifically prohibited by Section 56 of this act.
\* \* \*

4. While very few state courts appear to have addressed this question, the Pennsylvania Superior Court has held that a mentally handicapped adult should not be deprived of the freedom to choose with whom she associates. See *Schmidt v. Schmidt*, 313 Pa.Super. 83, 459 A.2d 421 (1983).

In *Schmidt*, the court held that an adult with Down's Syndrome could not be compelled to visit her father. The court there noted the Appellant had not been adjudicated incompetent, but the Appellant's mental age in *Schmidt* was similar to Ward's in this case.

pursuant to the terms and purpose of the Act.

¶ 10 REVERSED AND REMANDED.

JOPLIN, C.J., and BELL, J., concur.