2015 OK CIV APP 39

**In re the GUARDIANSHIP OF the Person and Estate of Braeden A. ROWLAND, a Partially Incapacitated Person:**

**Julie R. Crow, Guardian/Appellant,**

v.

**Barney Rowland, Natural Father/Appellee.**

**No. 112,314.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 10, 2015.

Tom Sullivent, Sid Martin, Sullivent Law Firm, Tulsa, Oklahoma, for Guardian/Appellant.

Bill M. Shaw, Erinn L. Shaw Bisceglia, The Shaw Law Firm, P.C., Claremore, Oklahoma, for Natural Father/Appellee.

BAY MITCHELL, Presiding Judge.

¶1 Guardian/Appellant Julie R. Crow (Mother) appeals from a guardianship Order which mandated visitation between her partially incapacitated adult son Braeden A. Rowland (Braeden) and Natural Father/Appellee Barney Rowland (Father). Mother also appeals the trial court's denial of her Motion to Reconsider that decision. Because we find the trial court's Order is contrary to law, we reverse.

¶2 Mother and Father divorced when Braeden was a minor. Custody was awarded to Mother. Father was given visitation every other weekend, with the condition that, if Braeden did not want to visit Father on a particular occasion, Father would be notified and visitation would not occur. When Braeden turned eighteen in 2011, Mother and her new husband petitioned for co-guardianship of Braeden's person and estate on the grounds that he was a partially incapacitated adult due to an autistic disorder.[1] Father objected to the petition as to Mother's husband and petitioned for co-guardianship with Mother. A guardian ad litem was appointed in February 2012. Per a temporary order in April 2012, the parties agreed to continue Braeden's visitation with Father every other weekend, plus one week per month during the summer months, until trial in September.

¶3 Visitation proceeded accordingly until July 2012, when Braeden refused to go to Father's for scheduled visitation. Mother contacted Braeden's guardian ad litem Edith Singer (Singer) and asked her to speak with Braeden. Singer testified that Braeden said he had "spent enough time with his dad" and that he did not want to go that particular weekend. When she asked why he did not want to visit Father, Braeden said, "He's been teasing me too much." Singer met with Braeden again in August because he still refused visitation with Father. Singer reported Braeden was more agitated this time and was adamant that he did not want to go. Singer's opinion was that mandatory visitation would not be in Braeden's best interest. Instead, she recommended that the court incorporate into the guardianship order the language from the divorce decree that Braeden would not be forced to visit Father if he chose not to.

¶4 On June 11, 2013, the trial court entered an Order appointing Mother as Braeden's guardian and setting a visitation schedule with Father. The Order did not include a provision for cancelling visitation at Braeden's request. Mother filed a Motion to Reconsider, urging the court to consider newly-decided appellate authority on the subject of visitation in adult guardianships. On October 7, 2013, the court issued an Order overruling Mother's Motion to Reconsider. Mother now appeals.[2]

1. Title 30 O.S.2011 § 1–111(A)(22) defines "partially incapacitated person" as an "incapacitated person whose impairment is only to the extent that without the assistance of a limited guardian said person is unable to:
a. meet the essential requirements for his physical health or safety, or
b. manage all of his financial resources or to engage in all of the activities necessary for the effective management of his financial resources. A finding that an individual is a partially incapacitated person shall not constitute a finding of legal incompetence. A partially incapacitated person shall be legally competent in all areas other than the area or areas specified by the court in its dispositional or subsequent orders. Such person shall retain all legal rights and abilities other than those expressly limited or curtailed in said orders[.]"

2. We will reverse a guardianship order only if it is clearly against the weight of the evidence or contrary to law. In re Guardianship of Berry, 2014 OK 56, ¶61, 335 P.3d 779, 799 (citing In re Guardianship of Holly, 2007 OK 53, ¶19, 164 P.3d 137, 143).

¶ 5 Mother claims the trial court erred by ordering Braeden to continue visitation with Father. We agree. Division I of the Court of Civil Appeals addressed this issue in *In re Guardianship of Borovetz*, 2013 OK CIV APP 39, 300 P.3d 140. There, the trial court ordered the ward, a partially incapacitated adult, to continue visitation with her natural father and denied her motion to terminate visitation. *Id.* at ¶ 4, 300 P.3d at 141. The Court of Civil Appeals held that the order was contrary to law and reversed. *Id.* at ¶ 1, 300 P.3d at 140. The trial court in the instant case distinguished *Borovetz* because in that case the ward had "presented evidence that continued contact with her father caused her to experience stress and anxiety which was detrimental to her health."

¶ 6 We disagree that this fact is outcome-determinative. Braeden is chronologically an adult and, although he has certain mental challenges, he is not mentally incompetent and is only partially incapacitated. He has the right to choose with whom he associates. *See Schmidt v. Schmidt*, 313 Pa.Super. 83, 86, 459 A.2d 421, 423 (1983) ("In the absence of an adjudication of incompetency, a handicapped adult should not be deprived of the freedom to make for himself or herself the same family related decisions which other adults enjoy.").

¶ 7 Our holding is also consistent with legislative intent. The Oklahoma Guardianship and Conservatorship Act, 30 O.S.2011 § 1–101 *et seq.*, provides as follows:

B. It is the purpose of the system of general and limited guardianships for incapacitated and partially incapacitated persons established by this act to provide for the participation of such persons, as fully as possible, in the decisions which affect them. It is the intent of the Oklahoma State Legislature:

1. That the court shall exercise the authority conferred by the Oklahoma Guardianship Act so as to encourage the development of maximum self-reliance and independence of the incapacitated or partially incapacitated person and make appointive and other orders only to the extent necessitated by the mental and adaptive limitations or other condition of the incapacitated or partially incapacitated person warranting the procedure[.]

30 O.S.2011 § 1–103. Court-ordered visitation does not allow Braeden to participate in decisions affecting him, nor does it foster his independence.

¶ 8 Finally, we note the practical difficulty of enforcing an order of visitation against an adult who refuses. Orders allowing visitation between a non-custodial parent and child are traditionally enforced by contempt proceedings against the custodial parent. *See Burris v. Hunt*, 1998 OK CIV APP 125, ¶ 7, 965 P.2d 1003, 1006. Indeed, Father filed applications for indirect contempt citations against Mother both times Braeden refused visitation. However, Mother cannot physically force a grown man to go somewhere he does not want to go, and Mother should not be subjected to the risk of contempt citations for something she cannot control.

¶ 9 Forcing Braeden to submit to visitation with Father is contrary to law. We therefore reverse that portion of the court's Order.

¶ 10 REVERSED.

HETHERINGTON, C.J., and JOPLIN, J., concur.