OSCN Found Document:IN RE GUARDIANSHIP OF ROWLAND

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN RE GUARDIANSHIP OF ROWLAND
2015 OK CIV APP 39
348 P.3d 228
Case Number: 112314
Decided: 04/10/2015
Mandate Issued: 05/07/2015
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2015 OK CIV APP 39, 348 P.3d 228

 

IN RE THE GUARDIANSHIP OF THE PERSON AND ESTATE OF BRAEDEN A. 
ROWLAND, A PARTIALLY INCAPACITATED PERSON:

JULIE R. CROW, Guardian/Appellant,
v.
BARNEY ROWLAND, 
Natural Father/Appellee.

APPEAL FROM THE DISTRICT COURT OF ROGERS COUNTY, OKLAHOMA
HONORABLE STEPHEN R. PAZZO, JR., SPECIAL DISTRICT 
JUDGE

REVERSED

Tom Sullivent, Sid Martin, SULLIVENT LAW FIRM, Tulsa, Oklahoma, for 
Guardian/Appellant,
Bill M. Shaw, Erinn L. Shaw Bisceglia, THE SHAW LAW FIRM, 
P.C., Claremore, Oklahoma, for Natural Father/Appellee.


Bay Mitchell, Presiding Judge:
¶1 Guardian/Appellant Julie R. Crow (Mother) appeals from a guardianship 
Order which mandated visitation between her partially incapacitated adult son 
Braeden A. Rowland (Braeden) and Natural Father/Appellee Barney Rowland 
(Father). Mother also appeals the trial court's denial of her Motion to 
Reconsider that decision. Because we find the trial court's Order is contrary to 
law, we reverse.
¶2 Mother and Father divorced when Braeden was a minor. Custody was awarded 
to Mother. Father was given visitation every other weekend, with the condition 
that, if Braeden did not want to visit Father on a particular occasion, Father 
would be notified and visitation would not occur. When Braeden turned eighteen 
in 2011, Mother and her new husband petitioned for co-guardianship of Braeden's 
person and estate on the grounds that he was a partially incapacitated adult due 
to an autistic disorder.[1] Father objected to the petition as to Mother's 
husband and petitioned for co-guardianship with Mother. A guardian ad 
litem was appointed in February 2012. Per a temporary order in April 2012, 
the parties agreed to continue Braeden's visitation with Father every other 
weekend, plus one week per month during the summer months, until trial in 
September.
¶3 Visitation proceeded accordingly until July 2012, when Braeden refused to 
go to Father's for scheduled visitation. Mother contacted Braeden's guardian 
ad litem Edith Singer (Singer) and asked her to speak with Braeden. Singer 
testified that Braeden said he had "spent enough time with his dad" and that he 
did not want to go that particular weekend. When she asked why he did not want 
to visit Father, Braeden said, "He's been teasing me too much." Singer met with 
Braeden again in August because he still refused visitation with Father. Singer 
reported Braeden was more agitated this time and was adamant that he did not 
want to go. Singer's opinion was that mandatory visitation would not be in 
Braeden's best interest. Instead, she recommended that the court incorporate 
into the guardianship order the language from the divorce decree that Braeden 
would not be forced to visit Father if he chose not to.
¶4 On June 11, 2013, the trial court entered an Order appointing Mother as 
Braeden's guardian and setting a visitation schedule with Father. The Order did 
not include a provision for cancelling visitation at Braeden's request. Mother 
filed a Motion to Reconsider, urging the court to consider newly-decided 
appellate authority on the subject of visitation in adult guardianships. On 
October 7, 2013, the court issued an Order overruling Mother's Motion to 
Reconsider. Mother now appeals.[2]
 
¶5 Mother claims the trial court erred by ordering Braeden to continue 
visitation with Father. We agree. Division I of the Court of Civil Appeals 
addressed this issue in In re Guardianship of Borovetz, 2013 OK CIV APP 39, 300 P.3d 140. There, the trial 
court ordered the ward, a partially incapacitated adult, to continue visitation 
with her natural father and denied her motion to terminate visitation. 
Id. at ¶4, 300 P.3d at 141. The Court of Civil Appeals held that the 
order was contrary to law and reversed. Id. at ¶1, 300 P.3d at 140. The 
trial court in the instant case distinguished Borovetz because in that 
case the ward had "presented evidence that continued contact with her father 
caused her to experience stress and anxiety which was detrimental to her 
health."
 
¶6 We disagree that this fact is outcome-determinative. Braeden is 
chronologically an adult and, although he has certain mental challenges, he is 
not mentally incompetent and is only partially incapacitated. He has the right 
to choose with whom he associates. See Schmidt v. Schmidt, 313 Pa.Super. 
83, 86, 459 A.2d 421, 423 (1983) ("In the absence of an adjudication of 
incompetency, a handicapped adult should not be deprived of the freedom to make 
for himself or herself the same family- related decisions which other adults 
enjoy.").
¶7 Our holding is also consistent with legislative intent. The Oklahoma 
Guardianship and Conservatorship Act, 30 O.S. 2011 §1-101 et seq., 
provides as follows:

 
 B. It is the purpose of the system of general and limited guardianships 
 for incapacitated and partially incapacitated persons established by this 
 act to provide for the participation of such persons, as fully as possible, 
 in the decisions which affect them. It is the intent of the Oklahoma State 
 Legislature:
 1. That the court shall exercise the authority conferred by the Oklahoma 
 Guardianship Act so as to encourage the development of maximum self-reliance 
 and independence of the incapacitated or partially incapacitated person and 
 make appointive and other orders only to the extent necessitated by the 
 mental and adaptive limitations or other condition of the incapacitated or 
 partially incapacitated person warranting the 
procedure[.]
30 O.S. 2011 §1-103. 
Court-ordered visitation does not allow Braeden to participate in decisions 
affecting him, nor does it foster his independence.
¶8 Finally, we note the practical difficulty of enforcing an order of 
visitation against an adult who refuses. Orders allowing visitation between a 
non-custodial parent and child are traditionally enforced by contempt 
proceedings against the custodial parent. See Burris v. Hunt, 1998 OK CIV APP 125, ¶7, 965 P.2d 1003, 1006. Indeed, Father 
filed applications for indirect contempt citations against Mother both times 
Braeden refused visitation. However, Mother cannot physically force a grown man 
to go somewhere he does not want to go, and Mother should not be subjected to 
the risk of contempt citations for something she cannot control.
¶9 Forcing Braeden to submit to visitation with Father is contrary to law. We 
therefore reverse that portion of the court's Order.

¶10 REVERSED.

HETHERINGTON, C.J., and JOPLIN, J., concur.

FOOTNOTES

[1] Title 
30 O.S. 2011 §1-111(A)(22) 
defines "partially incapacitated person" as an "incapacitated person whose 
impairment is only to the extent that without the assistance of a limited 
guardian said person is unable to:
a. meet the essential requirements for his physical health or safety, or
b. manage all of his financial resources or to engage in all of the 
activities necessary for the effective management of his financial resources. A 
finding that an individual is a partially incapacitated person shall not 
constitute a finding of legal incompetence. A partially incapacitated person 
shall be legally competent in all areas other than the area or areas specified 
by the court in its dispositional or subsequent orders. Such person shall retain 
all legal rights and abilities other than those expressly limited or curtailed 
in said orders[.]"

[2] We will 
reverse a guardianship order only if it is clearly against the weight of the 
evidence or contrary to law. In re Guardianship of Berry, 2014 OK 56, ¶61, 335 P.3d 779, 799 (citing In re 
Guardianship of Holly, 2007 OK 
53, ¶19, 164 P.3d 137, 
143).
 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2013 OK CIV APP 39, 300 P.3d 140, IN RE GUARDIANSHIP OF BOROVETZ
Discussed
 1998 OK CIV APP 125, 965 P.2d 1003, 69 OBJ 3279, Burris v. Hunt
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2007 OK 53, 164 P.3d 137, IN THE MATTER OF THE GUARDIANSHIP OF HOLLY
Discussed
 2014 OK 56, 335 P.3d 779, IN THE MATTER OF THE GUARDIANSHIP OF BERRY
Discussed
Title 30. Guardian and Ward
 Cite
Name
Level

 30 O.S. 1-101, Short Title
Cited
 30 O.S. 1-103, Purpose and Intent of Legislature
Cited
 30 O.S. 1-111, Definitions
Cited