2012 OK CIV APP 81

**In the Matter of the GUARDIANSHIP OF Hattie SMITH, an Incapacitated Person.**

**Johnnie Smith, Applicant/Appellant,**

v.

**Maxinne Jackson, Guardian/Appellee.**

No. 108,583.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 3, 2012.

---

Elizabeth R. Castleberry, Oklahoma City, Oklahoma, for Appellant.

LARRY JOPLIN, Vice–Chief Judge.

¶ 1 Johnnie Smith, Appellant, seeks review of the trial court's order denying his application for review of guardianship, for removal of guardian or, in the alternative, appointment of himself as co-guardian of Hattie Smith (the Ward). In his appeal, he alleges the trial court erred when it did not remove Maxinne Jackson as guardian or appoint him co-guardian. Appellant asserts the trial court failed to consider Hattie Smith's wishes; the clear weight of the evidence demonstrated the Ward's existing nursing home facility did not adequately attend to her needs; the trial court placed undue reliance on the report of the Ward's attorney; and the guardianship was not implemented in compliance with the guardianship act.

¶ 2 Johnnie Smith, Appellant and son of the Ward, Hattie Smith, sought to remove his sister, Maxinne Jackson (Jackson, Guardian or Appellee), as their mother's guardian and replace Jackson with himself as guardian or, in the alternative, co-guardian serving with Jackson. The Ward had resided at the Elk City Nursing Home since 2006 and Jackson had served as her guardian since that time. In late 2009, the Ward's health began to decline significantly; she had fallen multiple times at the nursing home facility, she was not eating, she was combative with staff, and she had bed sores that were not healing.

¶ 3 In March 2010, the Ward was admitted to Great Plains Medical Center. She remained at Great Plains for some time and was later transferred to Kindred Hospital in Oklahoma City when she showed no improvement at Great Plains. At Kindred, she began to improve, particularly with respect to the bed sores, which began to heal with daily cleaning and monitoring by an Oklahoma City wound care specialist. Her children also reported an improvement in her combative behavior, believing she had been overmedicated at the Elk City Nursing Home.

¶ 4 After her improvement at Kindred, several of the Ward's eight children believed it was important for the Ward to remain at an Oklahoma City nursing home facility in order to best continue the comprehensive care she received at Kindred. At the same time, Jackson was clear in her intent to return the Ward to the Elk City Nursing Home, as it was the most convenient location for Jackson for purposes of visiting and monitoring her mother's care. This conflict sparked Appellant's attempt to remove Jackson as guardian.

¶ 5 The trial court found the care at Elk City Nursing Home was not deficient, nor did the court find Jackson to be an inattentive guardian. As a result, the court overruled Appellant's motion, noting Elk City was the most convenient location for Jackson, the Ward had friends and church contacts in Elk City and it was not apparent the Ward's deterioration at the Elk City Nursing Home was the result of substandard care. The Ward, born in 1914, was ninety-five years old when the hearing on the matter of Jackson's removal was heard; the court noted many of the health issues the Ward presented were difficult, yet common, problems of aging. The court's order also decreed each of the Ward's children should have both unfettered access to the Ward and her medical records.

¶ 6 From this order Appellant brought his appeal. We note Appellee did not file a response to the petition in error, a response brief in this appeal, nor did she file a response to Appellant's petition for rehearing. Therefore, this appeal proceeds on Appellant's brief only. In a case proceeding on the appellant's brief only, this court is under no duty to search the record for a basis to affirm the judgment, and where the appellant's brief is "reasonably supportive of the allegations of error" this court will ordinarily grant the relief sought by the appellant. *Sneed v. Sneed,* 1978 OK 138, 585 P.2d 1363. However, "(r)eversal is never automatic[.] [The trial court's judgment] is presumed correct until the contrary has been shown by the record." *Hamid v. Sew Original,* 1982 OK 46, 645 P.2d 496, 497 (citations omitted).

¶ 7 Appellant presented evidence to the court the Ward did not receive ideal care at the Elk City Nursing Home and that she did not want to return to Elk City. Further, her condition had improved in Oklahoma City, and the services she received in Oklahoma City were not duplicated in Elk City. At the same time, Jackson, the Ward's guardian, presented evidence the Ward had not expressed to Jackson a preference to remain in Oklahoma City. Jackson asserted that the Elk City Nursing Home was capable of maintaining the care the Ward received in Oklahoma City with proper doctor's orders. Elk City provided greater access to the Ward for Jackson, and the Ward had friends, fellow church members and family who visited her in Elk City, and who would be unable to do so in Oklahoma City.

¶ 8 The Ward was admitted to Great Plains Medical Center in 2010 in an effort to improve and stabilize her condition, but she realized no marked improvement while at the facility. The family was given a choice of sending the Ward back to the Elk City Nursing Home in hospice care or sending her to Kindred Hospital in Oklahoma City.

¶ 9 While at Kindred, the Ward's condition improved, although there was some dispute between the parties as to how much she improved. However, the records indicate an intensive regimen formulated by an Oklahoma City based wound care specialist did bring about improvement in the Ward's bed sores, which had been chronic to that point. In addition, there were no noted instances of the Ward being combative with staff at Kindred. And the rehabilitation psychologist at Kindred testified that the Ward specifically expressed her desire not to return to Elk City and she was mentally capable of formulating that opinion. Her condition improved to such a degree that the physicians were no longer considering her return to the nursing home as a hospice patient.

¶ 10 Excited about the forward progress of their mother's health, Appellant and several of his siblings sought to have the Ward released to an Oklahoma City area nursing home to maintain the care she had received at Kindred. Appellant also testified the aesthetic and general atmosphere of the Oklahoma City facility was better than what was available to the Ward in Elk City.

¶ 11 Jackson did not want her mother to remain in Oklahoma City, because it required considerably more travel for Jackson in order to visit her mother and monitor her mother's care. Jackson maintained the nursing home in Elk City had nurses capable of following the doctor's orders provided by Kindred. And Jackson was amenable to bringing her mother back to Kindred if it proved necessary. The attorney for the Ward also submitted a report for the court's review indicating there was no pressing need to move the Ward to Oklahoma City, citing

Jackson had been an able guardian and the continued contact with friends and family available in Elk City was an advantage for the Ward. In balancing all the factors, the court found no compelling reason to remove Jackson as guardian. For the following reasons, we reverse the trial court's decision and remand for further proceedings.

¶ 12 Appellant's first proposition of error complains that the Ward's stated preference not to return to Elk City would not be honored with Jackson serving as guardian, contrary to 30 O.S.2001 § 1–103. Section 1–103 encourages incapacitated or partially incapacitated persons to participate in decisions which affect them to the extent of their ability to do so. *See also In the Matter of the Guardianship of Holly*, 2007 OK 53, ¶ 23, 164 P.3d 137, 144 ("The purpose of a guardianship is to allow the ward to participate, 'as fully as possible,' in the decisions affecting him.").

¶ 13 The Kindred psychologist reported the Ward did not wish to return to Elk City, and the psychologist explained why the Ward was capable of making her own decision and establishing such a preference. While Jackson testified the Ward did not express this preference to her, Jackson did not indicate the Ward expressed a preference to remain at the Elk City facility, either. Also related to, and perhaps more compelling than the Ward's preference in this case, is the marked improvement in the Ward's physical health under the care and supervision of the Kindred facility in Oklahoma City; so material was the Ward's improved health that she was no longer in hospice care after Kindred's intervention. In addition to the improvement of the Ward's chronic bed sores, the Ward was also less combative and had not fallen while at the Oklahoma City facility.

¶ 14 However, the court found Elk City to be the best location for the guardian's convenience and care of the Ward. While the statute encourages following the Ward's wishes, where "reasonably possible[,]" the court evaluated the best interests of the Ward in this case by weighing the considerations in favor of the guardian's attention and convenience over the Ward's preference and the medical evidence of the Ward's improved health. *In re Guardianship of Songer*, 2011 OK CIV APP 82, ¶ 6, 262 P.3d 384, 385 (the guardian is required to exercise his/her powers in the ward's best interests, as per 30 O.S.2001 § 3–104(C), and the court in the exercise of its discretion in choosing a guardian must consider the best interests of the ward as well).

¶ 15 The clear weight of the evidence established the Ward's preference was to remain in Oklahoma City, the Ward was capable of making such a decision on her own behalf and her health improved under the care of her medical team in Oklahoma City. Given the purpose of § 1–103 to facilitate the participation of the Ward herself, as well as promote the overall health and well being of the Ward, the trial court's decision is not supported by the clear weight of the evidence. Under the circumstances presented in this case, Jackson's convenience, though she has been a competent and attentive guardian, does not outweigh the Ward's stated preference and her improved health.

¶ 16 Appellant also asserts the Elk City Nursing Home did not adequately provide medical care for the Ward. Appellant asserts the multiple falls in 2009 and inadequate wound care were the fault of the nursing home. While it was true Appellant demonstrated the nursing home did not present the best record keeping and did not clean the wounds daily, it is not clear from the record the nursing home caused the Ward to suffer from bed sores or was the reason she fell. In fact, Jackson testified the Ward often refused to use the foot tent provided to her for purposes of keeping covers and sheets away from the sores on her feet. While in the Elk City facility, the Ward also had family members cover her with blankets against medical personnel recommendations, contributing to the severity of the bed sores on her body. Jackson testified the Ward was frequently impatient and did not wait for mobility assistance and this likely contributed to her multiple falls.

¶ 17 In any event, the evidence of substandard care at the Elk City Nursing Home was conflicting and, from the record provided, the clear weight of the evidence does not

demand a finding the nursing home's care was inadequate or substandard.

¶ 18 Appellant's third proposition of error maintains the trial court placed undue reliance on the report of the Ward's attorney. Appellant asserts the report was against the clear weight of the medical evidence, such as the Kindred Hospital recommendation the Ward continue wound care treatment in Oklahoma City.

¶ 19 The court may appoint an attorney to represent the Ward. *See* 30 O.S.2001 § 4–307(H) and 4–308(F). In this case, the attorney was asked by the court, on May 6, 2010, to prepare a report for the hearing to be held on June 2, 2010. The report was turned in at the eleventh hour, only a day prior to the hearing. And the attorney did not interview medical personnel in formulating his report, a fact of which the court was aware.

¶ 20 In countering the attorney's report, Appellant was able to submit hundreds of pages of medical evidence of his mother's declining health. The attorney's report posited the Ward's declining health was attributable to other factors, such as age, and outlined reasons to remain in Elk City, especially availability of the guardian and other family members. But there is no indication in the record what reliance, if any, the court placed on the attorney's report. The court had an abundance of evidence before it, supporting both parties' positions. The fact the court found the guardian's wishes and access to family to be important, as did the attorney, is not in itself evidence of undue reliance on the attorney's report. The clear weight of the evidence does not demonstrate the trial court unduly relied on the report as Appellant claims.

¶ 21 Appellant's final proposition of error complains of irregularity in the appointment of Jackson as guardian, noting removal of the Ward from her home in 2006, a significant change in the care plan in 2007, an irregularity in the court's 2008 order continuing the guardianship and a "do not resuscitate" order signed by Jackson when the Ward was admitted to Kindred Hospital in 2010.

¶ 22 At the June 2, 2010 hearing, Appellant did not complain of irregularities in the appointment of Jackson as guardian in 2006, 2007 or 2008, nor did Appellant seek timely removal of Jackson in 2006, 2007 or 2008, under 30 O.S.2001 § 4–801. Because the appellate court "shall confine its review to the record actually presented to the trial court[,]" Appellant's proposition of error relating to the manner of Jackson's appointment in 2006, 2007 and 2008 will not be addressed in this appeal. Rule 1.36(g), tit. 12, Ch. 15, App. 1, Oklahoma Supreme Court Rules.

¶ 23 With respect to Appellant's objection to Jackson signing the "do not resuscitate" order, the record revealed Kindred Hospital asked Jackson to sign the order as the Ward's guardian. However, upon evaluating the Ward, the hospital determined the Ward was able to sign this document herself; the "do not resuscitate" document signed by Jackson was discarded and the one signed by the Ward was substituted in its place. Considering the fact Jackson's "do not resuscitate" order is effectively non-existent, and in any event it mirrored the wishes of the Ward herself, we can find no basis upon which to grant relief with respect to this proposition of error.

¶ 24 The order of the trial court is REVERSED and this cause REMANDED in order that the wishes of the Ward should receive priority over the guardian's convenience, in keeping with 30 O.S.2001 §§ 1–103 and 3–104(C). Upon remand, the trial court may also evaluate the guardianship appointment, considering Appellant's application to be appointed guardian or, alternatively, co-guardian.

¶ 25 REVERSED AND REMANDED.

BUETTNER, P.J., and BELL, J. (sitting by designation), concur.